LEIGH M. CLARK, Supernumerary Circuit Judge.
The only question raised on this appeal is as to the admissibility of evidence as to the alcoholic content of a sample of blood taken from defendant promptly after his arrest on a charge of driving an automobile while intoxicated, for which there was a conviction from which this appeal is taken.
Appellant urges that the evidence shows that the sample of defendant’s blood was purportedly taken by authority of the Alabama Chemical Test for Intoxication Act, Code of Alabama 1940 (1973 Cumulative Pocket Part), T. 36, §§ 154 — 158, and that there was not strict compliance with some of the provisions of said Act. It is argued that there was a failure to comply with Section 155(b) but it is chiefly contended that there was a failure to comply with sub-section 155(c). They provide as follows :
“(b) Chemical analyses of the person’s blood, urine, breath to be considered valid under the provisions of this section shall have been performed according to methods approved by the state board of health and by an individual possessing a valid permit issued by the state board of health for this purpose. The state board of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state board of health.
“(c) Only a physician, registered nurse or duly licensed clinical laboratory technologist or clinical laboratory technician acting at the request of a law-enforcement officer may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath or urine specimens.”
As to (b), the evidence was that the person who made the chemical analysis of the sample of defendant’s blood was an employee of the State of Alabama Department of Toxicology in Huntsville, holding a B.S. degree in laboratory technology and a B.S. degree in medical technology from Auburn University. Defendant objected to her testimony on the ground that there was “no testimony that she possesses a valid permit, issued by the State Department of Health, for certifying her ability to take a chemical analysis of blood as is required by the statute.” On this point, the evidence afterwards showed that she did have a valid permit issued by the State Department of Health certifying that she was qualified to do chemical analyses of a person’s blood. The evidence further showed that the series of tests employed by her, which she clearly explained, was generally accepted procedure for measuring ethyl alcohol in the blood. She had a most impressive record of experience. She had made over fifteen hundred analyses for ethyl alcohol in human blood. She had lectured on alcohol physiology at the Highway Intoxication Seminar and on the same subject at the Huntsville Police Academy. She was fully authorized to make the test which she described and such test fully met the requirements set forth in § 155(b).
As to § 155(c), the lady that took the blood samples from defendant was a nurse in the emergency room of the Huntsville Hospital. The officer who took defendant to the hospital for that purpose testified that he saw the nurse draw the blood from him, and there is no question that the blood was taken from defendant and that it was the same sample of blood that was analyzed by the employee of the Department of Toxicology. The officer testified that the lady was a registered nurse, but upon *627 cross-examination, he said, “I don’t know it to be a fact.” On further cross-examination he said he had had dealings with her before in the emergency room, that the reports were filled out at the desk, that the lady that drew the blood had on “a white uniform with a name tag on as a Registered Nurse.”
Before the witness, the employee of the Department of Toxicology, testified as to her quantitative findings from her analysis of the sample of defendant’s blood, defendant moved to exclude all evidence pertaining to the blood sample on the ground that the law quoted above states, “Only a physician, registered nurse or duly licensed technician acting at the request of a law enforcement officer may withdraw blood.” The court overruled the motion and permitted the witness to testify in detail as to the tests and her findings. Appellant relies largely upon Myrick v. Montgomery, 54 Ala.App. 5, 304 So.2d 247, involving a breath test for intoxication by means of an intoximeter, in which it was held that as the section of the Alabama Chemical Test for Intoxication Act making the analysis admissible in evidence is contrary to the common law, it must be strictly construed and such a construction would require that the test and the operator have been approved as required by § 155(a)2 and (b).
Appellant seeks to extend Myrick to a holding that would invalidate the test and make inadmissible the evidence of the results thereof by reason of the alleged failure of the evidence to show that the nurse who drew the sample of blood from defendant’s arm was a registered nurse. We do not arrive at that conclusion for two reasons, (1) that the evidence is sufficient to support the inference that the nurse was a registered nurse and (2) the requirement that the blood be taken by specified professional personnel is for a purpose unrelated to the question of the admissibility of evidence of the results of a chemical analysis of the blood.
From the clear reason in Myrick that the statutory procedure by a statutorily authorized individual must be observed in order to insure the admissibility of evidence of the results of a test, it does not follow that the failure to have the blood, sample taken by a statutorily authorized individual makes inadmissible the results of the test. In the one there is a logical relationship between the statutory requirement and the reliability of the evidence of the results of the test; in the other there is not. The reason for the requirement that specified individuals only procure the sample of the blood is vivified by § 155(g) as follows:
“(g) No physician, registered nurse or duly licensed clinical laboratory technologist or clinical laboratory technician shall incur any civil or criminal liability as a result of the proper administering of a blood test when requested in writing by a law-enforcement officer to administer such a test.”
Although, as stated above, the results of the blood test analysis were admitted in evidence, over the stated objection or motion to exclude of defendant, the trial judge had a change of mind and after the jury had retired to deliberate and attempt to reach a verdict, it was learned that the jury wished to ask a question of the court, and the following occurred:
“THE COURT: Ladies and gentlemen, I have your question as I understand it. Have you elected a Foreperson?”
“JUROR: Yes, sir.
“THE COURT: Let me phrase the question as I understand it. You asked as to whether or not a blood alcohol content test is legally admissible in Alabama?
“JUROR: Yes, sir, I believe it was similar to that.
“THE COURT: As a general rule, yes. Let me instruct you, ladies and *628 gentlemen, at this time in this case that you are not to consider the taking or the results of a blood alcohol test in this case at all. Put it out of your minds and do not consider it in your deliberations in this case. Disregard the testimony pertaining to a test of blood alcohol that was taken at the Huntsville Hospital and to which the Toxicologist testified. That for the reason it has not been shown that the person who drew the blood was a physician, or a registered nurse or a licensed clinical laboratory technologist. Any further from the City?
“MR. CRADDOCK: No, sir.
“THE COURT: Anything further from the defendant?
“MR. CULVER: No, sir.
“THE COURT: Does that answer your question?
“JUROR: Yes, sir.”
No further comments were made. The jury returned to the jury room, and thereafter it was dismissed for the night to return the next morning for further deliberations, and there were no further developments until the jury returned the verdict about midmorning, finding the defendant guilty.
As previously indicated, we do not think the court was in error in admitting the evidence as to the findings on the analysis of the blood, but even if there were error in this respect, it was cured by the change in the ruling of the court in the particular respect or it was waived by defendant in his failure to ask for action by the court of a more curative nature, for which he was given full opportunity. We can come to no conclusion other than that defendant was pleased with the action of the court, that it apparently afforded defendant an unexpected hope of a favorable verdict, and defendant knowingly took his chance on the odds as they then stood, and after the verdict, had no just cause for complaint.
It should also be said that there was ample evidence, aliunde the chemical analysis of defendant’s blood, that he was driving a motor vehicle while intoxicated, even though he testified to the contrary and his testimony was to some extent corroborated by other witnesses. See, Holloway v. Birmingham, 56 Ala.App. 545, 323 So.2d 726. Furthermore, it should be stated that on the trial of this case the City was not given the benefit of instructions of the court as to the rebuttable presumptions set forth in Title 36, § 155.
We find no error that probably injuriously affected the substantial rights of defendant, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.