This is a workmen's compensation case.
The action was brought by the widow and minor children of Robert Oliver Lankford against Redwing Carriers, Inc., hereinafter referred to as Redwing. The complaint alleged that Lankford was killed as the result of an accident which occurred while he was driving a truck in the course of his employment and that compensation was due his survivors. Redwing defended by saying that Lankford's death was caused by his own willful breach of Redwing's rule forbidding employees to drink alcoholic beverages while driving, of which Lankford had knowledge, and that Lankford's death was caused by his own intoxication. The case was tried before a jury because Redwing relied on defenses set out in Title 26, Section 270, Code of Alabama 1940. The jury decided those defenses in favor of Lankford's survivors. Redwing's motions for judgment n.o.v. and new trial were overruled and Redwing then filed its petition for writ of certiorari in this court.
It was stipulated that at the time of the accident Robert Oliver Lankford was an employee of Redwing and was driving a truck belonging to Redwing. From the evidence it appeared that Lankford was driving within the line and scope of his employment.
The accident which resulted in Lankford's death involved only Lankford's tractor trailer rig. The accident occurred in the early hours of February 12, 1975 on U.S. Highway 82 in Barbour County, approximately fifteen miles west of Eufaula. According to the state trooper who investigated the accident, it was a foggy night and the road was wet. The vehicle left the roadway on the wrong side of the road, travelled some 360 feet, and came to rest on its left side. Mr. Lankford and another man were found dead in the cab of the truck. Also discovered were two partial six-packs of beer; three cans were missing from one brand and four from the other brand.
A blood sample was taken from Lankford by a local coroner approximately four hours after discovery of the accident and sent to the State Department of Toxicology to be analyzed for alcoholic content. Due to Lankford's heavy loss of blood, the coroner was unable to withdraw the amount of blood customarily used in testing for alcoholic content, and only one test was run. The test revealed a blood alcohol content of 0.17 percent; there was testimony that because the test was not run twice, as is the usual procedure, or with the standard amount of blood, the percentage found could be inaccurate by as much as 0.03 percent.
The issues presented to this court by Redwing focus on the trial court's charge to the jury. Redwing's first contention is that the trial court erred by refusing its requested charge that the jury must find for the defendant employer if the jury believed that Lankford's death was due substantially to his own intoxication, and further that the trial court failed to clarify the law concerning the defense of intoxication in its oral charge to the jury. Redwing's second contention is that the trial court erred in refusing three of Redwing's written requested charges dealing with the presumption of intoxication contained in Title 36, Sections 154 and 155, Code of Alabama 1940. In disposing of these issues we will discuss first Redwing's objection to the trial court's oral charge and then its objections to the refusal to give the requested written charges.
In deciding whether a trial court has failed to charge the jury in accordance with the request of a party, we look first to see if that party has complied with Rule 51, ARCP, which provides in pertinent part as follows:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, *Page 518 
stating the matter to which he objects and the grounds of his objection."
Thus, we must determine first whether Redwing objected to the trial court's refusal to give certain requested written charges and its failure to charge on certain aspects of applicable law, and second whether Redwing supported objections made with grounds. We would comment at this point that respondent did not object to a consideration of petitioner's contentions based on petitioner's failure to comply with Rule 51, ARCP. The determination of a compliance with Rule 51 where a party is presenting as error the trial court's failure to orally charge or the refusal to give a requested charge is deemed to be primarily the duty of the reviewing court.
At the close of the oral charge to the jury, the court gave the parties an opportunity to object to the oral charge; no objections were made. Therefore, it is obvious that so far as Redwing's contention that the trial court failed to properly charge on the defense of intoxication is concerned, there has been a complete failure to abide by Rule 51, supra. Since no objection was made to the oral charge by Redwing, it cannot now question the failure of the trial court to charge as it desired. Barksdale v. Pendergrass, 294 Ala. 526, 319 So.2d 267
(1975); Alabama Power Co. v. Taylor, 293 Ala. 484,306 So.2d 236 (1975).
Redwing's second contention is that the trial court erred in refusing its requested charge on intoxication as a defense and its requested charges on the presumption supposedly created by Title 36, Sections 154 and 155. Here again we must first decide whether Redwing properly preserved its right to raise as error the trial court's refusal to charge by following the requirements of Rule 51.
The record shows that at the close of evidence, the trial judge held a conference in chambers to rule on requested charges filed by both parties and to discuss the court's oral charge. During this meeting, the trial judge discussed with the attorneys for both parties the requested charges and told the attorneys which charges he was going to give and which ones he refused. In the process of doing this, the judge also commented on matters that would and would not be included in his oral charge and concluded by saying that each party had an automatic exception to the refused charges.
The trial judge did tell the petitioner's attorneys that they had an exception and could assign grounds for their objections later.
It is clear that under Rule 51, not only must an objection to the trial court's failure or refusal to charge be made, but the objection must be made specifically and must be supported by grounds in order for review to be had in the appellate court.Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975).
The record bears out the failure of petitioner to object to each and every refused charge and to assign grounds therefor as required by Rule 51; however the colloquy between counsel and the court during the time that the court was considering the requested charges and tentatively commenting on the general content of his upcoming oral charge convinces us that the trial court made his reasons for refusing certain requested charges sufficiently clear to counsel for petitioner so as to convince petitioner's counsel that further objection or discussion would be fruitless. Under these circumstances, we consider Rule 51 to have been complied with so as to authorize our review. AmericanNational Bank Trust Co. v. Aetna Insurance Co., 447 F.2d 680
(7th Cir. 1971).
Petitioner contends that the trial court erred in refusing to give the following requested charge:
 "I charge you, members of the Jury, that if you believe from the evidence that Mr. Lankford's death was due substantially to his own intoxication, then you must find for the Defendant, Redwing Carriers, Inc."
The court instead charged that if the jury found Mr. Lankford was intoxicated at the time of the accident then it must further determine *Page 519 
 ". . . whether or not his injury and death was the proximate consequence of that intoxication. . . . If [the intoxication] was the proximate cause of the injury and death, then, the law says he would not be entitled to compensation. If it . . . was not the proximate cause of his injury and death, then, of course, he would be entitled to compensation."
The petitioner alleges error in that the jury could have inferred from this charge that the intoxication defense is effective only if the intoxication were the sole cause of the accident. Relying on Woosley v. Central Uniform Rental,463 S.W.2d 345 (Ky.App. 1971), petitioner urges that the intoxication defense should be allowed if the intoxication in some way contributes to the occurrence of the accident, which is the rule reflected in petitioner's refused charge.
We are disinclined to adopt the rule urged by petitioner. We think the trial court's charge stated the correct rule in this state, namely that in order for an employer to avail itself of the statutory intoxication defense, it must appear that the injury or death suffered by the employee was proximately caused by the employee's intoxication. We have found no case on point in this state; however, we believe the legislature intended a proximate cause standard.
Title 26, Section 253, Code of Alabama 1940 (Recomp. 1958) expresses intent that the injury or death suffered by an employee be "the natural and proximate cause" of an accident arising from the employment. Our courts have so interpreted the statute. Foster v. Continental Gin Co., 261 Ala. 366,74 So.2d 474 (1954); Pow v. Southern Const. Co., 235 Ala. 580,180 So. 288 (1938).
Pursuant to Section 253, supra, Section 270, Title 26, Code of Alabama 1940 (Recomp. 1958) (Supp. 1973) permits certain defenses to the employer, i.e., if the employee's injury or death is
 ". . . caused by the wilful misconduct of the employee or by the employee's intention to bring about the injury or death of himself or of another, or due to his own intoxication or his wilful failure or wilful refusal to use safety appliances provided by the employer, or due to the wilful refusal or wilful neglect of the employee or servant to perform a statutory duty or due to any other wilful violation of the law by the employee or his wilful breach of a reasonable rule or regulation of his employer, of which rule or regulation the employee has knowledge."
While the phrase "proximately caused" is not used, it seems, by inference from the language of Section 253, that a proximate cause standard was intended. This inference is strengthened by reference to the Minnesota statute from which our workmen's compensation law was taken. Under Section 176.021, Minnesota Statutes, 1974, in order to be a defense the employee's intoxication must be the proximate cause of the employee's injury.
Furthermore, dicta in our cases indicate that a proximate cause standard has been followed by our courts. In Harris v.Louisville N.R. Co., 237 Ala. 366, 186 So. 771 (1939), the court discussed the purpose of workmen's compensation acts as stated in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285,76 L.Ed. 598 (1932), i.e. to secure an immediate investigation and judgment of the employer's liability. This purpose in turn depends upon finality of the determination of fact, including "the question of fact whether injury was occasioned solely by the intoxication of the employee . . . ." 237 Ala. at 370,186 So. at 774 (emphasis supplied).
In Malbis Bakery Co. v. Collins, 245 Ala. 84, 15 So.2d 705
(1943), the employer raised as a defense to an employee's action under Title 26, Section 253, the allegation that the employee was guilty of wilful conduct which proximatelycontributed to his injuries. (Emphasis ours.) The supreme court upheld the trial court's finding that the employee had not violated a reasonable rule of the employer.
Early in the establishment of workmen's compensation laws in this state, it was said: *Page 520 
 "The spirit and purpose of Compensation Laws, as often disclosed, is that industry shall bear part of the burden of disability and death, resulting from the hazards of industry." Pow v. Southern Const. Co., supra, 235 Ala. at 584, 180 So. at 291.
Since then the workmen's compensation act has been liberally construed to accomplish its beneficent purpose. See, e.g.,Gilmore v. Rust Engineering Co., 289 Ala. 46, 265 So.2d 591
(1972); Ex parte Young, Ala.Civ.App., 342 So.2d 918 (1976). To this end, all reasonable doubt in the evidence must be resolved in favor of the employee. Riley v. Perkins, 282 Ala. 629,213 So.2d 796 (1968); Vulcan Materials Co. v. Belcher, 49 Ala. App. 61, 268 So.2d 843, cert. den. 289 Ala. 754, 268 So.2d 848
(1972). And, where an employer raises an employee's intoxication as a defense to a workmen's compensation claim, the employer has the burden of establishing the intoxication.Queen City Furniture Co. v. Hinds, 274 Ala. 584, 150 So.2d 756
(1963).
In light of this line of decisions, we are compelled to reject petitioner's contention that the law in this state should allow an employer to successfully defend a workmen's compensation claim if the employer can show that the employee was intoxicated and that intoxication contributed to bringing about the accident which resulted in the employee's injury or death. Rather, we think the legislature intended a successful defense only where it appears that the accident producing the injury or death was proximately caused by the employee's intoxication. We conclude that the trial court properly refused petitioner's requested written charge and correctly instructed the jury.
Petitioner finally contends that the trial court erred in refusing to give the following requested charges:
 "I charge you, members of the Jury that it is the law of Alabama that if a chemical test authorized by the law of the State of Alabama is conducted and if there was at that time 0.10% or more by weight of alcohol in the tested person's blood, it shall be presumed that the person was under the influence of intoxicating liquor."
 "I charge you, members of the Jury, that it shall be presumed that a person was under the influence of intoxicating liquor if, at the time that person's blood was tested, there was 0.10% or more by weight of alcohol in that person's blood."
 "I charge you, members of the Jury, that a postmortem blood analysis can provide a good measurement of conditions at the time of death and that if such analysis is conducted by competent means and by means of standard operating procedures; and if said analysis reveals that there was 0.10% or more by weight of alcohol in the deceased's blood, then it shall be presumed that the deceased person was under the influence of intoxicating liquor at the time of death."
The presumptions stated in these three charges are based upon subsection (a) of Section 155, Title 36, Code of Alabama 1940 (Recomp. 1958) (Supp. 1973).
At trial the court refused to allow the provisions of Section 155, supra, into evidence on the grounds that the statute was intended to apply only to living persons being prosecuted for driving while intoxicated, and because the evidence did not show the blood sample had been tested according to the provisions of the statute. The trial court could have refused the petitioner's three requested charges for the same reasons.
We cannot, however, agree with the trial court that the provisions of the Alabama Chemical Test for Intoxication Act, Sections 154-158, Title 36, supra, apply only to living persons being prosecuted for violating municipal ordinances and the criminal laws of this state. Section 154 (b) of the act plainly applies to dead persons. Section 155 (a) makes the results of a test administered under the act admissible "[u]pon the trial of any civil or criminal action" (emphasis ours). See Myrick v.City of Montgomery, 54 Ala. App. 5, 304 So.2d 247, cert. den.293 Ala. 768, 304 So.2d 248 (1974). If the trial court refused to give petitioner's three requested charges on the first named *Page 521 
ground, then, to that extent, it would be in error.
However, there was no error in refusing to give the requested charges on the ground that the provisions of the statute directing the manner in which blood shall be taken were not complied with. Subsection (c) of Section 155, supra, requires:
 "Only a physician, registered nurse or duly licensed clinical laboratory technologist or clinical laboratory technician acting at the request of a law-enforcement officer may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath or urine specimens."
In the case at bar the coroner of Barbour County, who is also a mortician, withdrew the blood sample. A coroner has no authority under Section 155, supra, to take a blood sample for the purposes of analysis. Rehling v. Carr, 295 Ala. 366,330 So.2d 423 (1976).
Furthermore, the supreme court has indicated that strict compliance with the requirements of Section 155, supra, is a condition precedent to the admissibility of the results of tests made under the statute. Patton v. City of Decatur, Ala.,337 So.2d 321 (1976). While Patton deals only with Section 155 (b), we think the rationale of the decision applies equally to Section 155 (c). In reaching this conclusion, we are mindful that the Court of Criminal Appeals has, by way of dicta inHarbin v. City of Huntsville, Ala.Cr.App., 333 So.2d 625
(1976), indicated it holds a contrary view. We note that Harbin
was decided prior to Patton.
Patton held that before results of a photoelectric intoximeter test can be admitted into evidence, a proper predicate must be laid by showing written standards promulgated by the state Board of Health under which the test was administered. In its decision the court stated:
 "[O]ur inability here to ascertain the validity of the results obtained from a technologically sophisticated device due to questionable operator technique, demonstrates the absolute necessity for written procedural methods governing its use." 337 So.2d at 324.
We think that this rationale, referring to Section 155 (b), is equally applicable to Section 155 (c). The purpose of allowing only physicians, registered nurses, or duly licensed clinical laboratory technologists and technicians to withdraw blood samples is to ensure that standardized procedures and equipment be used, thereby preserving the validity of the test. The instant case illustrates why a standardized procedure, performed by the persons named in the statute, is desirable.
The coroner testified that due to the heavy loss of blood by Mr. Lankford, he was unable to draw the amount of blood normally required to run the test. He withdrew blood from the jugular vein. In response to the question:
 "Q Is it not a fact that the most responsive part of the body that you can go to in a case like this would be the heart cavity itself?"
he replied:
"A Yes, but we don't go into the heart cavity."
He also stated that he used a vein tube to withdraw the blood, an instrument used in embalming and not ordinarily used to withdraw blood. The particular vein tube he used to withdraw blood from Mr. Lankford had previously been used to embalm other bodies. It had been cleaned in a disinfectant germicidal solution, which contained alcohol.
Therefore, not knowing on which ground the trial court rested its decision to reject the three requested charges, we cannot hold that it committed error in refusing those written requested charges.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 522