667 So.2d 110 (1995)
BLUE WATER CATFISH, INC.
v.
Richard M. HALL.
AV93000463.
Court of Civil Appeals of Alabama.
February 17, 1995.
Rehearing Denied April 7, 1995.
Certiorari Denied July 28, 1995.
*111 Thomas R. Jones, Jr. and M. Bradley Almond of Rosen, Cook, Sledge, Davis, Carroll & Jones, P.A., Tuscaloosa, for appellant.
William J. Donald, Jr. and Wayne Randall of Donald, Randall, Donald, Tipton & Donaldson, Tuscaloosa, for appellee.
Alabama Supreme Court 1941045.
YATES, Judge.
In October 1991, Richard M. Hall sued Blue Water Catfish, Inc., for workmen's compensation benefits for injuries he sustained to his back and to his body as a whole as a result of a motor vehicle accident that occurred on July 28, 1991.[1] Hall was employed by Blue Water as a driver to transport fish. The accident occurred when the truck he was driving ran off the road and flipped over, throwing Hall from the vehicle.
Following an ore tenus proceeding, the trial court entered a judgment in Hall's favor, awarding him $8,049.06 in accrued temporary total disability benefits; $5,544.82 in accrued permanent partial disability benefits; $63.69 in permanent partial disability benefits; and attorney fees. The trial court also ordered Blue Water to pay $139,003 in medical bills incurred by Hall. Blue Water appeals, contending: (1) that the trial court erred in awarding Hall compensation and (2) that the trial court's judgment is "insufficient" in that it lacks "true" findings of fact. Specifically, Blue Water argues that no benefits were due Hall because, they say, Hall's accident and his injuries were caused by his intoxication and his willful violation of a company policy. Blue Water relies on those affirmative defenses allowed employers under Ala.Code 1975, § 25-5-51.
Section 25-5-51 provides that "no compensation shall be allowed for an injury or death caused by the willful misconduct of the employee, ... or by an accident due to the injured employee being intoxicated from the use of alcohol." Blue Water contends that at the time of the accident Hall was intoxicated and that, as a result, he lost control of the truck and had a single-vehicle accident. Hall denied that he had consumed alcohol on the day of the accident, and he argues that there is a lack of evidence that his accident was proximately caused by intoxication.
*112 We note that there is a two-step process in our review of workmen's compensation cases. We must first determine whether there was any evidence to support the trial court's findings. If we find such evidence, we must then determine whether a reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
Eddie Wilder, the investigating officer, testified that at the point where the accident began, the road was straight, but that it then curved and slightly banked to the left. He stated that Hall drove off the right side of the road onto the shoulder, travelling 309 feet before reentering the roadway and flipping over. Wilder further stated that he found no evidence of alcohol containers and no evidence that Hall was intoxicated. However, he also stated that he remained 8 to 10 feet from Hall and that he did not get close enough to him to determine if Hall had consumed alcohol.
Hall testified that on the night before the accident he had had three to four drinks, but that between the time he went to bed that night and approximately 3:00 p.m. the next day, when the accident occurred, he had consumed no more alcoholic beverages. He further testified that he was aware of Blue Water's policy prohibiting drinking and driving.
Hall admitted that he had been twice convicted for driving under the influence of alcohol and that, as a result, his driver's license had been suspended for one year. He also stated that he had voluntarily received treatment for alcoholism on three separate occasions, but he claimed that he was not aware that during his six-week stay in the hospital after the accident he had received treatment for detoxification. When questioned if he was, in fact, an alcoholic, Hall responded, "It's hard to say." Hall testified that he did not remember anything that happened during the three weeks following the accident and that he, therefore, did not know whether he had told one of his treating physicians that he had been drinking on the day of the accident.
Judy Lynn Prince testified that Hall came every day into the store where she worked. She stated that at approximately 5 a.m. on the morning of the accident Hall came into the store, that she sat with him while he drank a cup of coffee, and that she could not detect that he had consumed any alcohol. Prince further testified that Hall remained in the store for approximately 30 minutes that morning and that he was sober while he was there.
Lois Hall, Richard Hall's mother, testified that she saw him at his home at around 8:30 a.m. that morning and that she saw no indication that he had consumed alcohol. She stated that he was coherent and that his voice was not slurred. However, she stated that she did not visit long. She testified that she spoke with Hall by telephone at approximately 2:30 p.m. that afternoon and that Hall sounded "perfectly normal."
Michael Milner, an employee of Blue Water who had hired Hall, testified that he saw and talked to Hall for about 20 minutes sometime between 9:00 a.m. and 12:00 noon that day and that he saw no indication that Hall had been drinking alcohol. Further, Milner stated that after Hall had left in his truck, he spoke with Hall over his truck radio and that Hall gave no indication that he had consumed alcohol.
Don Jackson, a witness to the accident and the first person on the scene, testified that it appeared to him that before the accident occurred, Hall's truck was travelling at approximately 45 to 50 miles per hour and that "it wasn't weaving ... it was going straight." He stated that he did not detect the smell of alcohol on Hall; however, he went on to explain that he remained three to four feet away from him.
Lee Jackson also witnessed the accident. He testified that he found Hall lying in a ditch and that he assisted a woman in rolling him over. Jackson estimated that he was within one to two feet of Hall's face and that he did not detect the smell of alcohol on Hall.
Both parties stipulated to the testimony of Sarah Howard, an emergency medical technician with Hale County Ambulance Service, who was unable to be at the trial. They stipulated that Howard would have testified that she responded to the scene and that *113 upon reaching Hall she turned him over and his breath smelled of alcohol.
Pamela Kirkland, a registered nurse and trauma team leader at Druid City Hospital ("DCH") in Tuscaloosa, testified that her responsibility included reporting and assessing Hall's condition when he arrived at the hospital after the accident. She stated that she smelled alcohol on Hall's breath and that she noted that fact in the hospital records.
Dr. Robert Posey, a staff physician in the emergency department at DCH, treated Hall that day. He testified through deposition that Hall smelled of alcohol and that his speech was slurred.
Vickie Jenkins, a medical technologist at DCH, testified that she performed a blood alcohol test on Hall that day and that the test revealed a blood alcohol content of .290%.
Dr. Naresh Kumar, a trauma surgeon at DCH and Hall's treating physician throughout his six-week hospitalization, testified through deposition that when he examined Hall on the day of the accident, he smelled alcohol on Hall's breath and noted that fact in Hall's records. Dr. Kumar also testified that Hall himself stated that he had been drinking. Dr. Kumar also stated that Hall suffered from delirium tremens during his hospitalization.
This court has established that in order for an employer to successfully defend a workmen's compensation claim with the affirmative defense of intoxication it must appear that the accident producing the injury was proximately caused by the employee's intoxication. Lankford v. Redwing Carriers, Inc., 344 So.2d 515 (Ala.Civ.App.), cert. denied, 344 So.2d 522 (Ala.1977). The general rule in Alabama regarding proximate causation is that an act is the proximate cause of an injury if that injury is "a natural and probable consequence of the negligent act... which an ordinarily prudent person ought reasonably to foresee would result in injury." Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala.1976).
Given the evidence that Hall was driving a vehicle, while his blood alcohol rating was.290%, almost three times the legal limit, and the fact that he himself was uncertain as to the cause of the accident, it seems reasonably certain that the wreck occurred as a result of Hall's intoxication. After carefully examining the evidence, we conclude that based on these facts no reasonable view of the evidence supports the trial court's judgment awarding Hall workmen's compensation benefits.
We are aware of the rule that, "Where one reasonable view of the evidence supports the trial court's judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome." Ex parte Veazey, 637 So.2d 1348, 1349 (Ala. 1993). However, we must conclude, in light of the scientific evidence and expert testimony indicating that Hall was intoxicated at the time of the accident, that the trial judge's factual findings was not a "reasonable view" of the evidence.
Given our disposition, we need not address the second issue raised by Blue Water. The judgment of the trial court is reversed and the cause is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN, and CRAWLEY, JJ., concur specially.
ROBERTSON, P.J., and MONROE, J., dissent.
CRAWLEY, Judge, concurring specially.
While I agree with the opinion, I also find the willful misconduct defense a compelling reason to reverse the judgment of the trial court.
Section 25-5-51, Ala.Code 1975, provides that "no compensation shall be allowed for an injury ... caused by the willful misconduct of the employee." This court, in Sun Papers, Inc. v. Jerrell, 411 So.2d 790 (Ala.Civ.App. 1981), defined "willful misconduct":
"`Wilful' misconduct, as used in § 25-5-51, `"includes all conscious or intentional violations of definite law or definitely prescribed rules of conduct, as to which obedience is not discretionary, as contradistinguished *114 from inadvertent, unconscious, or involuntary violations thereof."` Sloss-Sheffield Steel & Iron Co. v. Nations, 236 Ala. 571, 183 So. 871 (1938), citing Ex parte Woodward Iron Co., 212 Ala. 220, 102 So. 103 (1924)."
Sun Papers, 411 So.2d at 794 (emphasis added).
Section 32-5A-191(a) eliminates any discretion a driver might have had to drive on the public roads while drunk. It provides that "[a] person shall not drive ... any vehicle while: (1) There is 0.10 percent or more by weight of alcohol in his or her blood."
The blood alcohol test performed on Hall revealed a blood alcohol content of 0.29 percent. This court stated in Gallups v. United States Steel Corp., 353 So.2d 1169, 1171 (Ala. Civ.App.1978), that a blood alcohol content of 0.29 percent was "sufficient alcohol to cause extreme intoxication." (Emphasis added.)
In Hemer v. Workmen's Compensation Appeal Board, 71 Pa.Cmwlth. 174, 454 A.2d 225 (1983), a trucker was killed in Indiana while driving with a blood alcohol content of 0.24 percent. A denial of compensation was upheld on the ground that driving while intoxicated was a violation of Indiana statutes and, therefore, that the Pennsylvania violation-of-law defense barred the claim.
The Legislature of the State of Alabama has declared the following presumptions with regard to one's use of alcohol while operating a motor vehicle:
"(b) Upon the trial of any civil, criminal, or quasi-criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcohol, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath or other bodily substance shall give rise to the following presumptions:

". . . .
"(3) If there were at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol."
§ 32-5A-194(b)(3) (emphasis added).
If a 0.10 percent blood alcohol level is sufficient to establish a presumption that one is under the influence of alcohol, then a level almost three times as great affords a strong presumption that one is under the influence.
No reasonable view of the evidence rebuts this strong presumption. Hall repeatedly testified that he did not remember how the accident occurred. He said the last thing he remembered before the accident was looking at cows to the left of the road. He did not remember running off the road or hitting a mailbox. He had no explanation for how his truck travelled 309 feet along the side of the road before turning over. He was asked at trial if he had previously made a statement to the effect that the cause of the accident was water shifting in the tank. He answered, "And when I looked off, now I'm assuming, I'm guessing, I don't know, I don't remember, when I looked off I must have veered off the side of the road.... And I don't know that, I'm just assuming. That's the only thing I can come up with." Therefore, his statement that alcohol did not contribute to or cause the accident is not credible.
The trial court did not identify any factual basis for a finding that the cause of the accident was something other than extreme intoxication. The only reference in the judgment to the cause of the accident is this statement:
"On July 28, 1991, while the plaintiff was working for the defendant, he was involved in a vehicular accident while driving a catfish holding, or water tank, truck; he sustained bodily injuries in the accident, including a fractured thoracic spine and fractured ribs."
The only reference in the judgment to the willful misconduct is this statement:
"The defendant, in its answer filed in this cause and [again] at the trial of this case, asserted the affirmative defenses set forth in § 25-5-51, Code of Alabama, ... including intoxication and willful violation of a company policy and/or regulation of the employer. However, the Court specifically *115 finds that the defendant failed to meet its burden of proof with respect to this affirmative defense and that it failed to reasonably satisfy the Court that intoxication and/or willful violation of a company rule or regulation of the employer proximately caused the accident and injury made the basis of this workmen's compensation action [; see Lankford v. Redwing Carriers, Inc., 344 So.2d 515 (Ala.Civ.App.1977)]."
In Carroll v. Deaton, Inc., 555 So.2d 140 (Ala.1989), Carroll was injured when the car he was driving swerved off U.S. Highway 11 in Jefferson County and hit a Deaton trailer parked on the side of the road. Blood alcohol tests performed on Carroll immediately following the accident disclosed that his blood alcohol level was 0.259 percent. Thereafter, Carroll brought suit against Deaton alleging that the failure to equip the parked trailer with headlights or taillights constituted negligence and that that negligence had proximately caused Carroll's injuries. Deaton's motion for summary judgment was granted. Carroll appealed. On appeal, the Alabama Supreme Court stated:
"Under Code § 32-5A-194(b)(4), a person with a blood alcohol level of .10 percent or more is presumed under the influence of alcohol. Carroll does not dispute the results of the blood test administered to him immediately after the accident; thus, it must be taken as established that he was intoxicated at the time of the collision."
555 So.2d at 141.
The Court stated further that "the proximate cause of Carroll's accident was not the absence of lights on Deaton's trailer, but rather Carroll's intoxication, which caused him to leave the highway." Id. In other words, a blood alcohol level slightly less than Hall's was sufficient in Carroll to establish proximate cause.
In workers' compensation cases, an employee must present "more than evidence of mere possibilities such as would simply serve to `guess' the employer into liability." Eddy v. Dunlop Tire & Rubber Corp., 516 So.2d 709, 711 (Ala.Civ.App.1987); Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala. Civ.App.1989); accord Salter v. CECO Corp., 596 So.2d 927, 930 (Ala.Civ.App.1991). In Eddy, the employee injured his left knee and hip in a work-related accident. He alleged that he injured his left arm and hand in the same accident. Although the knee and hip injuries were not in dispute, the employee could give no explanation as to how the arm or hand injury occurred. The trial court, therefore, denied compensation for the arm and hand injury, since the employee's claim regarding it was based merely on speculation and conjecture.
Because no reasonable view of the evidence suggests that anything other than extreme intoxication was the cause of the accident, the judgment of the trial court was plainly erroneous and must be reversed.
THIGPEN, J., concurs.
ROBERTSON, Presiding Judge, dissenting.
I respectfully dissent to the reversal of the trial court's judgment on the authority of Ex parte Veazey, 637 So.2d 1348 (Ala.1993).
MONROE, Judge, dissenting.
I would affirm the trial court's judgment, therefore, I must respectfully dissent.
Our standard of review in workmen's compensation cases is very limited. First, we must determine whether there was any evidence to support the trial court's findings. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991) (emphasis added). Clearly, in this case there was evidence to support the trial court's finding that Hall was entitled to recover workmen's compensation. At least five witnesses testified that they saw or spoke to Hall either before or immediately after the accident. None of them found any indication that Hall had consumed alcohol.
Next, we must determine whether any reasonable view of that evidence supports the trial court's judgment. Eastwood, supra (emphasis added). "Where one reasonable view of the evidence supports the trial court's judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome." Ex parte Veazey, 637 So.2d 1348, 1349 (Ala.1993). In the case at *116 bar, there was conflicting evidence as to whether Hall had consumed alcohol before the accident, and as to whether the consumption of alcohol caused the accident. Clearly, one reasonable view of the evidence in this case would be that intoxication did not cause the accident. For Hall to have had a blood alcohol level as high as the medical reports indicated, he would have to have been intoxicated enough for witnesses to notice. Two witnesses to the accident, Don Jackson and Lee Jackson, both came within several feet of Hall immediately after the accident and did not smell alcohol. Additionally, the investigating officer, Eddie Wilder, found no evidence that Hall was intoxicated. Although medical reports of blood alcohol levels are admissible evidence of intoxication, they are not infallible proof. Medical reports have, on occasion, been known to be wrong. Therefore, given the substantial eyewitness testimony, one reasonable view of the evidence would be that Hall was not intoxicated and/or that intoxication did not cause the accident.
It is not the appellate court's role to act as the trier of fact; that is the function of the trial court. In its order, the trial court specifically addressed the issue of Hall's alleged intoxication, finding:
"The defendant, in it's answer filed in this cause and at the trial of this case, asserted the affirmative defenses set forth in § 25-5-51, Code of Alabama as amended (1975), including intoxication and willful violation of a company policy and/or regulation of the employer. However, the Court specifically finds that the defendant failed to meet its burden of proof with respect to this affirmative defense and that it failed to reasonably satisfy the Court that intoxication and/or willful violation of a company rule or regulation of the employer proximately caused the accident and injury made the basis of this workmen's compensation action [see Lankford v. Redwing Carriers, Inc., 344 So.2d 515 (Ala.Civ.App. 1977) ]."
Clearly the trial court considered all the evidence and found that it was insufficient to deny workmen's compensation to Hall, especially given the rule that workmen's compensation laws are to be liberally construed in favor of the injured employee. Therefore, I would affirm the trial court.
NOTES
[1] We note that because of the date of the injury, the Workmen's Compensation Act, as it read before the amendments of May 19, 1992, is controlling.