In October 1991, Richard M. Hall sued Blue Water Catfish, Inc., for workmen's compensation benefits for injuries he sustained to his back and to his body as a whole as a result of a motor vehicle accident that occurred on July 28, 1991.[1] Hall was employed by Blue Water as a driver to transport fish. The accident occurred when the truck he was driving ran off the road and flipped over, throwing Hall from the vehicle.
Following an ore tenus proceeding, the trial court entered a judgment in Hall's favor, awarding him $8,049.06 in accrued temporary total disability benefits; $5,544.82 in accrued permanent partial disability benefits; $63.69 in permanent partial disability benefits; and attorney fees. The trial court also ordered Blue Water to pay $139,003 in medical bills incurred by Hall. Blue Water appeals, contending: (1) that the trial court erred in awarding Hall compensation and (2) that the trial court's judgment is "insufficient" in that it lacks "true" findings of fact. Specifically, Blue Water argues that no benefits were due Hall because, they say, Hall's accident and his injuries were caused by his intoxication and his willful violation of a company policy. Blue Water relies on those affirmative defenses allowed employers under Ala. Code 1975, § 25-5-51.
Section 25-5-51 provides that "no compensation shall be allowed for an injury or death caused by the willful misconduct of the employee, . . . or by an accident due to the injured employee being intoxicated from the use of alcohol." Blue Water contends that at the time of the accident Hall was intoxicated and that, as a result, he lost control of the truck and had a single-vehicle accident. Hall denied that he had consumed alcohol on the day of the accident, and he argues that there is a lack of evidence that his accident was proximately caused by intoxication. *Page 112 
We note that there is a two-step process in our review of workmen's compensation cases. We must first determine whether there was any evidence to support the trial court's findings. If we find such evidence, we must then determine whether a reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala. 1991).
Eddie Wilder, the investigating officer, testified that at the point where the accident began, the road was straight, but that it then curved and slightly banked to the left. He stated that Hall drove off the right side of the road onto the shoulder, travelling 309 feet before reentering the roadway and flipping over. Wilder further stated that he found no evidence of alcohol containers and no evidence that Hall was intoxicated. However, he also stated that he remained 8 to 10 feet from Hall and that he did not get close enough to him to determine if Hall had consumed alcohol.
Hall testified that on the night before the accident he had had three to four drinks, but that between the time he went to bed that night and approximately 3:00 p.m. the next day, when the accident occurred, he had consumed no more alcoholic beverages. He further testified that he was aware of Blue Water's policy prohibiting drinking and driving.
Hall admitted that he had been twice convicted for driving under the influence of alcohol and that, as a result, his driver's license had been suspended for one year. He also stated that he had voluntarily received treatment for alcoholism on three separate occasions, but he claimed that he was not aware that during his six-week stay in the hospital after the accident he had received treatment for detoxification. When questioned if he was, in fact, an alcoholic, Hall responded, "It's hard to say." Hall testified that he did not remember anything that happened during the three weeks following the accident and that he, therefore, did not know whether he had told one of his treating physicians that he had been drinking on the day of the accident.
Judy Lynn Prince testified that Hall came every day into the store where she worked. She stated that at approximately 5 a.m. on the morning of the accident Hall came into the store, that she sat with him while he drank a cup of coffee, and that she could not detect that he had consumed any alcohol. Prince further testified that Hall remained in the store for approximately 30 minutes that morning and that he was sober while he was there.
Lois Hall, Richard Hall's mother, testified that she saw him at his home at around 8:30 a.m. that morning and that she saw no indication that he had consumed alcohol. She stated that he was coherent and that his voice was not slurred. However, she stated that she did not visit long. She testified that she spoke with Hall by telephone at approximately 2:30 p.m. that afternoon and that Hall sounded "perfectly normal."
Michael Milner, an employee of Blue Water who had hired Hall, testified that he saw and talked to Hall for about 20 minutes sometime between 9:00 a.m. and 12:00 noon that day and that he saw no indication that Hall had been drinking alcohol. Further, Milner stated that after Hall had left in his truck, he spoke with Hall over his truck radio and that Hall gave no indication that he had consumed alcohol.
Don Jackson, a witness to the accident and the first person on the scene, testified that it appeared to him that before the accident occurred, Hall's truck was travelling at approximately 45 to 50 miles per hour and that "it wasn't weaving . . . it was going straight." He stated that he did not detect the smell of alcohol on Hall; however, he went on to explain that he remained three to four feet away from him.
Lee Jackson also witnessed the accident. He testified that he found Hall lying in a ditch and that he assisted a woman in rolling him over. Jackson estimated that he was within one to two feet of Hall's face and that he did not detect the smell of alcohol on Hall.
Both parties stipulated to the testimony of Sarah Howard, an emergency medical technician with Hale County Ambulance Service, who was unable to be at the trial. They stipulated that Howard would have testified that she responded to the scene and that *Page 113 
upon reaching Hall she turned him over and his breath smelled of alcohol.
Pamela Kirkland, a registered nurse and trauma team leader at Druid City Hospital ("DCH") in Tuscaloosa, testified that her responsibility included reporting and assessing Hall's condition when he arrived at the hospital after the accident. She stated that she smelled alcohol on Hall's breath and that she noted that fact in the hospital records.
Dr. Robert Posey, a staff physician in the emergency department at DCH, treated Hall that day. He testified through deposition that Hall smelled of alcohol and that his speech was slurred.
Vickie Jenkins, a medical technologist at DCH, testified that she performed a blood alcohol test on Hall that day and that the test revealed a blood alcohol content of .290%.
Dr. Naresh Kumar, a trauma surgeon at DCH and Hall's treating physician throughout his six-week hospitalization, testified through deposition that when he examined Hall on the day of the accident, he smelled alcohol on Hall's breath and noted that fact in Hall's records. Dr. Kumar also testified that Hall himself stated that he had been drinking. Dr. Kumar also stated that Hall suffered from delirium tremens during his hospitalization.
This court has established that in order for an employer to successfully defend a workmen's compensation claim with the affirmative defense of intoxication it must appear that the accident producing the injury was proximately caused by the employee's intoxication. Lankford v. Redwing Carriers, Inc.,344 So.2d 515 (Ala.Civ.App.), cert. denied, 344 So.2d 522
(Ala. 1977). The general rule in Alabama regarding proximate causation is that an act is the proximate cause of an injury if that injury is "a natural and probable consequence of the negligent act . . . which an ordinarily prudent person ought reasonably to foresee would result in injury." Vines v.Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala. 1976).
Given the evidence that Hall was driving a vehicle, while his blood alcohol rating was .290%, almost three times the legal limit, and the fact that he himself was uncertain as to the cause of the accident, it seems reasonably certain that the wreck occurred as a result of Hall's intoxication. After carefully examining the evidence, we conclude that based on these facts no reasonable view of the evidence supports the trial court's judgment awarding Hall workmen's compensation benefits.
We are aware of the rule that, "Where one reasonable view of the evidence supports the trial court's judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome."Ex parte Veazey, 637 So.2d 1348, 1349 (Ala. 1993). However, we must conclude, in light of the scientific evidence and expert testimony indicating that Hall was intoxicated at the time of the accident, that the trial judge's factual findings was not a "reasonable view" of the evidence.
Given our disposition, we need not address the second issue raised by Blue Water. The judgment of the trial court is reversed and the cause is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN, and CRAWLEY, JJ., concur specially.
ROBERTSON, P.J., and MONROE, J., dissent.
[1] We note that because of the date of the injury, the Workmen's Compensation Act, as it read before the amendments of May 19, 1992, is controlling.