112 So.2d 511

**Ted Leon HOLMES**

v.

**STATE.**

**7 Div. 563.**

Court of Appeals of Alabama.

March 24, 1959.

Rehearing Denied April 7, 1959.

MacDonald Gallion, Atty. Gen., and Jas.
W. Webb, Asst. Atty. Gen., for the State.

Stringer & Montgomery, Talladega, for appellant.

CATES, Judge.

Holmes has appealed from a conviction of involuntary manslaughter carrying a twelve months' jail sentence.

The homicide charged was the killing of Doyle Wayne Wright and his two and a half year old daughter, Donna Faye, in a collision between automobiles driven by Wright and by Holmes.

The wreck occurred about nine o'clock on the night of November 8, 1957, at a point on the Talladega-Sylacauga road somewhat north from the Alpine turn off. Holmes was traveling south going from Talladega toward Sylacauga. Wright was headed north.

There were only two eye witnesses, Holmes and Mr. J. W. Moore, a friend of his, who had followed him in another car all the way from Talladega.

The fact that two deaths resulted from the same transaction, does not make the indictment duplicitous. See Nixon v. State, 268 Ala. 101, 105 So.2d 349, a case of Nixon's car simultaneously striking three children.

The State offered the testimony of Robert Elders who was caught with a flat tire on his car at a point "something like a mile" from the point of collision. He

saw Holmes' and Moore's cars pass going toward Sylacauga. He was able to observe them for only about an eighth of a mile looking from where his car was stopped toward the point of collision. This appears the result of Elder's being parked on the side of a hill.

As to what he could hear of the cars after they had gone by, Elders testified:

"Well, yeah, I could hear them a pretty good piece, but I couldn't say just how far I could hear them. Something like a quarter of a mile I reckon surely. I couldn't say I could hear them any further. I wasn't paying any attention to that."

After the lapse of some fifteen minutes, Elders came upon the scene of the wreck.

The testimony went:

"Q. What is your opinion as to the speed of the red and black automobile?

"Mr. Stringer: Now, if your Honor please we renew our objection to that on the ground that it calls for irrelevant, immaterial, incompetent and illegal testimony and on the further ground the witness is not shown to be qualified to express an opinion, and on the further ground—express an opinion about the matter inquired about— and on the further ground that the speed of the automobile which the witness says he saw at the place where he saw it sheds no material evidence upon the speed of the automobile at the time the alleged collision took place, sheds no material evidence upon the matters involved in this case.

"The Court: I'll overrule.

"Mr. Stringer: We except.

"A. You wanted me to estimate the speed I thought he was making. I would say he was at least making 75 or 80 miles an hour.

"Q. That is your best judgment? A. Yes, sir.

"Mr. Stringer: We move to exclude that answer.

"The Court: That is your best judgment you said?

"A. Yes, sir.

"The Court: I'll overrule.

"Mr. Stringer: We except."

On his cross-examination, Elders was asked:

"Q. Did you judge the speed by the sound it made when it passed? A. Yes, sir, from the sound when it come in sight until it left out of my hearing."

And again we find:

"Q. How far did it travel before it got out of your sight? A. I couldn't say just exactly how far he traveled before he got out of my sight, something like—

"Q. (interrupting) Well, you were down there, weren't you? A. — something like the distance from here to the post office over there.

"Q. After that he went over a hill out of your sight? A. That's right.

"Q. You don't know what speed he made after he got out of your sight? A. Well, no.

"Q. And that was nearly a mile from the time—in other words, the distance from the place where he got out of your sight to the place where you saw these cars down there in a wrecked condition, that was nearly a mile, wasn't it? A. Something nearly a mile.

"Q. And you don't know whether he slowed up or went faster when he went out of your sight, is that right? A. No, sir, I don't know."

Evidence of speed at a remote point has been admitted "when it relates to a place

not so remote as that a *fair* inference *may* be indulged that *substantially* such speed was *probably* maintained to and at the time of the accident." Townsend v. Adair, 223 Ala. 150, 134 So. 637, 639. (Italics added.) The application of this somewhat iffy formula is committed to the sound discretion of the trial judge. Whittaker v. Walker, 223 Ala. 167, 135 So. 185.

The distances in the Alabama cases run: Utility Trailer Works v. Phillips, 249 Ala. 61, 20 So.2d 289 (⁹⁄₁₀ mile, variation in grade; not error to exclude); Hodges v. Wells, 226 Ala. 558, 147 So. 672 (several miles; error to admit; reversed on other grounds); Bains Motor Co. v. Le Croy, 209 Ala. 345, 96 So. 483 (several hundred feet; not error to admit; reversed on another ground); Davies v. Barnes, 201 Ala. 120, 77 So. 612 (1½ blocks; not error to admit; 4–3 court).

In Lessman v West, 20 Ala.App. 289, 101 So. 515, the car remained in view from its first being seen until impact.

A prosecution witness (in Bradford v. State, 166 Miss. 296, 146 So. 635) was on the porch of his home about a mile from the collision when he saw appellant drive past going from fifty to fifty-five miles an hour. The cutout never slowed down until the collision. The court held that based upon this continuous perception the testimony had probative value.

In a criminal case, Graham v. State, 25 Ala.App. 44, 140 So. 621, this court, per Sanford, J., held that error, if any, in admitting evidence (among other things) of speed at a point one-fourth mile distant was cured by instructing the jury not to consider "the testimony * * * about meeting a car."

In the opinion in what seems to be the first case involving a motor car, Davies v. Barnes, supra, Judge Somerville was careful to point out that speed at one point does not create even a rebuttable (or disputable) presumption of continuing status. However, where, very shortly after the distant observation (1½ blocks), the vehicle hit a flagman (the plaintiff), the opinion states the speed then was "clearly a fact for the jury to consider, as affording an inference of fact with respect to its probable speed and control" at the time of striking the flagman. Thus, it would seem the court has treated the testimony as circumstantial evidence.

On rehearing (with three very able justices dissenting), after referring to Louisville & N. R. Co. v. Woods, 105 Ala. 561, 17 So. 41, Mr. Justice Somerville went on:

"So far as the prima facie relevancy of the evidence in the instant case is concerned, we think the question is foreclosed by the decision in the Woods case.

"If subsequent developments in the course of the trial nullified this prima facie relevancy, which we need not determine, a motion should have been made for its exclusion, failing which the trial judge cannot be put in error for its original rightful admission.

"We, of course, do not overlook the difference between a railroad train running on rails, and probably observing the obligations of a schedule time, and an automobile running on the highway at the will of its driver. There is a difference, but the difference is in the strength of the inference and its probative value, and not in the principle of relevancy and admissibility.

"*With respect to the distance at which previous speed is admissible for this purpose, there must indeed be some limit;* but, as in all similar cases, this will depend upon the facts of each case, and must be left to the sound discretion of the trial court." [201 Ala. 120, 77 So. 613] (Italics added.)

If the expression "prima facie relevancy" is but an outcropping of the scintilla rule, then, of course, the principle would not operate in criminal trials. Blue v. State, 246 Ala. 73, 19 So.2d 11. On the

other hand, the further express limitation with respect to the distance away from the collision at which speed loses relevancy clearly shows that the trial judge is not to be cloaked with an irrevisable discretion.

In Whittaker v. Walker, supra, Sayre, J., who had dissented in Davies v. Barnes, alludes to the road surface differences in former decisions and seemingly detracts from the analogy between an automobile and a locomotive. By and large, the adoption of the foot throttle and four wheel brakes has made the acceleration and deceleration of a motor car much more responsive to the will of the operator.

From 5A, Am.Jur., Automobiles, etc., § 954, we quote in part:

"* * * Certain types of conduct can be changed quickly, so that evidence of such conduct at one point can have little independent value as proof of the same conduct at a different time and place. * * * If a driver is speeding at a certain moment he can quickly reduce his speed; and if his car is straddling the center line of the highway he can quickly get onto the right side; and the further from the scene the conduct occurred, the less probable it is that the conduct continued, and the more likely the court is to exclude the testimony on the ground of remoteness. * * *"

If we were to suggest a yardstick for admissibility, it would involve primarily what mechanical and controlling forces were available to have avoided the fault for the collision. A reasonable man (while he may assume oncoming traffic will not veer across the center of the road) should (subject to such assumptions that others will drive properly) at all times be able to control his car within the available clear distance.

Thus, Holmes, when going eighty miles an hour, needed only to lower his speed to fifty miles per hour to be within the lawful nighttime speed limit for an open road. According to Elders, there was an unob-served distance of some 4,600 feet which was left to Holmes to slow down to the speed limit. There was no evidence that this was impossible.

Had there been other and prior observations of speed at frequent intervals, it might be that the concatenation would have shown a pattern manifesting probability that Holmes was a heavy footed driver. Thus, in Fleming v. Lawson, 10 Cir., 240 F.2d 119, observation of the defendant going ninety miles per hour at a point thirty-three miles from the accident was admissible. But the observer was in a car going in the same direction and seems to have had other opportunities to observe. The case was civil. See also Comins v. Scrivener, 10 Cir., 214 F.2d 810, 46 A.L.R.2d 1; Annotation 46 A.L.R.2d 9.

While there is a discretion in the trial judge, the test for its abuse is whether remoteness has destroyed the relevancy of the proferred fact. Thus, in Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216, 217, we find:

"As a general rule, facts are deemed relevant which logically tend to prove or disprove the fact in issue, or which afford a reasonable inference or shed light upon the matter contested; and facts bearing so remotely upon or collaterally to the issue that they afford merely a conjectural inference concerning the facts in issue should not be admitted in evidence. * * *

"Whether evidence offered is too remote to be admissible is for the court, in the exercise of a sound discretion, and such ruling will not be revised on appeal unless it is plain that error was committed. * * *"

See also Chattahoochee Valley Ry. Co. v. Williams, 267 Ala. 464, 103 So.2d 762.

Was Elders's testimony of Holmes's speed relevant to blame for the fatal wreck? Wide latitude is given as to the admission of circumstantial evidence, but there the test is whether a particular fact,

in connection with all the others, forms a chain tending to show guilt, Russell v. State, Ala., 38 So. 291. Thus, fact A alone may prove nothing on an issue, but if fact B with fact A gives a logical inference of the existence of C, then A has relevancy as to C. On the other hand, a mirror casts no light of its own, and if its reflection colors or twists the image, then there is distortion.

Here, the testimony was not admitted under an offer to connect it up later; nor, as we read the record, is there anything but conjecture that Holmes continued headlong into the night. Indeed, Moore, the State's witness, said Holmes was travelling at about the legal speed limit when he (Moore) first observed Wright coming into Holmes's side of the road. Moreover, Elders was somewhat confused as to the color of Moore's car.

In a similar state of facts on an issue of contributory negligence, the Fifth Circuit, per Strum, J., held in David Bilgore & Co. v. Ryder, 5 Cir., 211 F.2d 855, 858, that it was not error to exclude evidence of the plaintiff's speed three-fourths of a mile before his reaching the point of collision. The court said:

"In our case of Atlantic Greyhound Corp. v. Crenshaw [5 Cir., 99 F.2d 449], however, the court cautioned against the reception of the evidence of one who merely saw the vehicle pass when so far from the point of the accident that it could not be presumed that its then speed continued down to the accident. That is the situation here.

"The proposed witnesses gave the speed of plaintiff's car when it passed them about ¾ of a mile before the accident, but there is no evidence that they continued to observe it after it passed them. The terrain in that vicinity is 'rolling' and the road passes over a series of small hills which obscure vision from time to time. There is positive evidence that these witnesses did not see the collision, and consequently did not know the speed of plaintiff's car at that time, although they did identify plaintiff's car as the one which passed them back down the road. In these circumstances, with the rolling terrain, there is no persuasive presumption that plaintiff's car maintained the speed at which the proposed witnesses said it was traveling when it passed them ¾ of a mile back down the road.

"Moreover, the proposed witnesses described the car that passed them as 'a yellowish green car.' All the other testimony, including the photographs in evidence, shows plaintiff's car to have a white or cream colored body, and a black metal top. When all these matters are considered, we find no abuse of discretion in rejecting the proffered evidence."

In Morris v. Aero Mayflower Transit Co., 73 Ariz. 390, 242 P.2d 279, 282, we find:

"As to the defendant Aero Mayflower Transit Company, there is no evidence in the record that the driver of the truck was negligent at the time and place. There is no evidence of its speed at that point except that of Wiley, the driver of truck, who testified he was traveling between 30 and 35 miles per hour at that point. The speed limit on Van Buren east of 48th Street was 45 miles per hour. A sign at 48th Street directed westbound traffic to slow down to 35 miles per hour after passing 48th Street. The testimony of Lloyd Morris that the truck was making 50 miles per hour four or five blocks east of 48th Street is entitled to no consideration, first because the witness wasn't shown to be qualified to give such testimony, and secondly, because evidence of speed of the truck four or five blocks away from the point of impact is incompetent to show the speed of the truck at 48th Street unless it were further shown

that he maintained the same speed until it reached 48th Street. Young v. Campbell, 20 Ariz. 71, 177 P. 19. At 30 or 35 miles per hour or even at 25 miles per hour the driver of the truck couldn't possibly have avoided striking the Ford car which suddenly came out in his line of traffic only 25 to 30 feet ahead of the truck when he saw him."

The following from Barrett v. Shirley, Miss., 95 So.2d 471, 473, seems self explanatory:

"We first consider the assignment dealing with the testimony of C. C. Zimmerman, which was admitted over objection of appellant. Zimmerman testified that he was driving north along Highway 45 just out of Quitman about one-fourth or one-half mile south of the scene of the accident; that a black and white Buick passed him at a speed of 75 or 80 miles per hour; that three or four minutes later he came upon the accident and recognized the Barrett Buick as the one that passed him. He did not say that he saw the accident or that the Buick continued to the place of the accident at the same speed.

\*     \*     \*     \*     \*     \*

"We recognize that the trial court has some discretion in excluding or admitting such testimony, but the area within which such discretion may be exercised is limited.

"As a general rule where the speed of a vehicle is a factor in determining the proximate cause of a collision the evidence as to speed should be limited to the time of, or immediately before, the collision, and the court should exclude evidence of speed prior to and remote from the collision in question; but evidence of prior speed may be admitted if (1) the evidence shows that the vehicle continued to be operated approximately at the same speed until the collision occurs, or (2) where the circumstances are such, because of the nearness of the prior speed to the collision in point of time and distance or because of other factors, that the prior speed has substantial evidential value as to the speed of the vehicle at the time of, or immediately before, the collision.

"Zimmerman did not testify that he saw the Buick automobile when it approached the curve north of which the accident occurred. In fact, he did not testify to anything other than the speed at some point south of the place of collision and that he came upon the scene of the accident some three or four minutes after the Buick passed him. In our opinion, this does not establish causal connection with the accident. It was not shown that the Buick continued at or about the same speed to the place of collision. Under the circumstances of this case, the speed of the Barrett Buick at the place testified by Zimmerman has no substantial evidential value as to the speed at the time of, or immediately before, the collision. The jury would have had to speculate to draw the inference that Barrett coninued to operate at such a high rate of speed around the curve that he had just turned before reaching the place where the accident occurred. This testimony was too remote and was inadmissible."

■ Certainly, as seems to be universally conceded, the test of relevancy of this sort of evidence must depend upon the facts of each case. Usually the facts of any given case are of such a peculiar composition as to afford little help in going from one case to another. Then, too, for us to say a trial judge has abused the discretion committed to him (particularly where only vague qualitative standards have been given him) comes near to being blind man's buff. But we perceive a light of connected doctrine in the Alabama cases which leads us to consider that the instant testimony should have been excluded.

In this case, we consider that Elders's testimony was not relevant on the issue of guilt or of any proper subordinate issue presented by the record. Also, we consider its admission was probably prejudicial to Holmes's substantial right, and, therefore, the judgment below is due to be

Reversed and remanded.