313 So.2d 215

**Robert Marice ST. JOHN**

v.

**STATE.**

**8 Div. 549.**

Court of Criminal Appeals of Alabama.

April 1, 1975.

Rehearing Denied April 22, 1975.

———◆———

Timothy W. Morgan, Huntsville, for appellant.

William J. Baxley, Atty. Gen., and Rosa G. Hamlett, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Conviction on a three count indictment of drug prescription fraud with general verdict: fifteen years imprisonment.

The indictment in three counts accused appellant and one "Bo" Taylor of obtaining dilaudid, dihydromorphine (Sched. I, § 204(c)(8)) by fraud, deceit, etc., through the use of a forged prescription. The Uniform Controlled Substances Act (Act No. 1407, September 16, 1971, provides in § 403(a)). "It is unlawful for any person: * * * (3) to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge * * *" Subsection (b) of said § 403 provides for a penalty upon conviction of imprisonment of not less than two, nor more than fifteen years and also permits a fine of not more than $25,000.

I

The physician, whose name was forged to the prescription presented by Taylor, testified that he had not prescribed anything for Taylor, not knowing him. In the past he prescribed dilaudid for the appellant, and arranged for the appellant to go to Birmingham to be placed under the methadone control program as a hard drug addict.

The pharmacist checked the prescription handed him by Taylor and found it had not been written by the physician. An officer called to the apothecary by the druggist arrested Taylor as he was leaving with the drug obtained by the false prescription.

Another officer had watched appellant bring Taylor to the pharmacy. Appellant stayed in his car a while, then seemingly under some apprehension of trouble left in a great hurry. The watching officer gave chase, siren going, lights flashing on top of his car. During the pursuit appellant threw away a paper bag. The officer, after he arrested appellant, returned and retrieved, among other things, a pad of blank prescriptions bearing at the top "Medical Center Hospital, Huntsville, Alabama." An examination of this pad revealed a finger print of the appellant. In brief it is argued by appellant's counsel:

"An equally plausible interpretation of the evidence could be that Appellant

gave Bo Taylor a ride to the drug store to fill a prescription not knowing that same had been forged and left the parking lot after letting Bo Taylor out. There has been no showing that Appellant and Bo Taylor were acting in concert with a common goal, hence Appellant's fourth Proposition of Law: 'Merely being at or near the scene of a crime even without raising the hue and cry does not make a man either principal or accessory to that crime. Leonard v. State, 43 Ala.App. 454, 192 So.2d 461 (1966), Pugh v. State, 42 Ala.App. 499, 169 So.2d 27, Hollinger v. State, 40 Ala. App. 281, 112 So.2d 220.

" 'Criminal agency in another's offense is not shown merely by an exhibition of passivity. Pugh v. State, 42 Ala.App. 499, 169 So.2d 27 (1964).' To make this Appellant an accessory and thereby equally guilty as the actual offender, Bo Taylor, the State must adduce some legal evidence implying that he either recruited, helped or counseled in preparing the crime or took or undertook some part in its commission. The State failed to meet this burden and presented no such proof. 'Criminal agency in another's offense is not shown merely by an exhibition of passivity. People v. Woodward, 45 Cal. 293, 13 Am.Rep. 176.' "

Contra, the State in it's brief argues:

"The transcript reveals sufficiently substantial evidence, not just a scintilla from which to infer the guilt of the Appellant. There existed a relationship prior to commission of the crime between the Appellant and the doctor from whom the prescriptions were stolen and forged (Tr. p. 15). The Appellant is a known drug addict (Tr. p. 14). The Appellant was observed at the time of the crime together with a companion who actually presented the forged prescription (Tr. pp. 43, 44). Appellant sped from the scene * * * throwing a bag containing stolen prescription blanks from his car (Tr. p. 45). Analysis revealed a clear finger print belonging to the Appellant on the stolen pads."

We conclude that there was sufficient evidence of guilt and participation by appellant in Taylor's clearly fraudulent obtention of the drug to make out a case of aiding and abetting. Thus, appellant was equally guilty with Taylor. Code 1940, T. 14, § 14.

II

Appellant's counsel asks us to reverse because of the refusal of a number of written charges. These charges were submitted in writing but had appended to them various citations from different opinions of our appellate courts.

Some of these cases stand for more than one proposition, thus, tendered Charge D–1 refers to Gilmore v. State, 99 Ala. 154, 13 So. 536. Apparently, defendant would have us uphold his tendered charge on the basis of Charge 3 in the *Gilmore* opinion, however, the *Gilmore* opinion also puts its stamp of approval on a charge numbered 13. This Charge 13 was expressly disapproved in Bohlman v. State, 135 Ala. 45, 33 So. 44. A reference to Shepard's Alabama Citator will give many instances where *Gilmore* charges have been questioned.

In contrast to Rule 51 of Civil Procedure (ARCP 51), Code 1940, T. 7, § 273 remains in full force and effect as to criminal cases. In Houston v. State, 25 Ala. App. 425, 148 So. 861, Judge Bricken recited the source of countless cases which have held that § 273, supra, has always been held to apply to criminal cases.

It is to be noted that said § 273 uses an expression not found in Rule 51, supra, i. e., the charges which are given or refused must be acted upon by the trial judge " * * * in the terms in which they are written * * *." Rule 51, (first sent.) puts no such strait jacket on the trial judge: he must only charge the jury on the law as set forth in the request not in ipsissimis verbis.

The second sentence of § 273, supra, says that the given charges " * * * must be taken by the jury with them on retirement, * * *" Rule 51, on the other hand, is explicit: "Neither the pleadings nor 'given' written instructions shall go into the jury room"

We quote from Huffaker, Instructions to the Jury, 34 Ala.Lawyer 320:

"Current Alabama procedure under Title 7, § 273, specifically requiring that charges be given or refused in the terms in which they are written, has resulted in innumerable appellate decisions upholding the trial court's refusal to give requested instructions because of technical errors contained in the request. Abolition of this technical requirement under Rule 51, when coupled with the prohibition against allowing instructions to be taken into the jury room should preclude further appellant decisions holding that charges contained misspelled words or citations of authority are properly refused. See e. g., State v. Ingalls, 277 Ala. 562, 173 So.2d 104 (1965); Gilbert v. Vann, 284 Ala. 279, 224 So.2d 635 (1969); Reliance Life Insurance Co. v. Garth, 192 Ala. 91, 68 So. 871 (1915). * * *"

■ We consider that State v. Ingalls, 277 Ala. 562, 173 So.2d 104, states the law which controls, in this case, which respect to the use of citations in the proposed charges in this case.

, " * * * The court would be bound to read to the jury, not only the proposition of law stated in the charge, but also the written citations. The citations would not help the jury. * * *"

\* \* \* \* \* \*

"We are of the opinion that refusal of a requested charge does not constitute error where, as here, the charge bears citation of authority."

In Gilbert v. Vann, 284 Ala. 279, 224 So.2d 635, charges bearing citations precisely in the form here submitted are set out in the opinion. The Supreme Court there quoted with approval and followed the *Ingalls* case.

We believe *Ingalls* is based on 75 Am. Jur.2d, Trial § 639. That authority in turn rests in part on Notary v. United States, 8 Cir., 16 F.2d 434, wherein we find:

"The practice has often been condemned of citing instances or decisions of courts in other cases to juries in connection with instructions. It almost invariably leads, as in the present case, to an argumentative instruction. * * *"

*Notary,* supra, was cited with approval in People v. Mears, 251 Mich. 359, 232 N.W. 358.

■ In a criminal case we see no fundamental objection under § 273, supra, to furnishing the judge with the source from which proposed instructions are taken, e. g., cases or textbooks, etc. However, we consider that the citations should be put on separate sheets of paper from the instructions themselves so as not to confuse the jury or require that the trial judge read one or more appellate opinions to the jury.

### III

■ The refused charges here were all fairly and substantially covered by the given charges or by the oral charge. There was thus no error in their refusal even if they had been in proper form, i. e., without citations of authority.

We have reviewed the entire record under T. 15, § 389, Code 1940.

The judgment below is

Affirmed.

All the Judges concur.