The defendant was indicted and convicted for second degree murder arising out of a vehicular homicide in which six people were killed. He was sentenced to fifteen years' imprisonment.
The only issue on appeal is whether the prosecution laid a proper predicate for the admission into evidence of a chemical analysis of the defendant's blood for alcohol.
In this State, a statute authorizes the admission into evidence of the chemical *Page 757 
analysis of a person's blood. Alabama Code Section 32-5-193 (a) 1975. However, before the test results are admissible, the specific requirements of the statute must be satisfied.
In order to be valid the chemical analysis must have been performed (1) "according to methods approved by the state board of health" and (2) "by an individual possessing a valid permit issued by the state board of health for this purpose". Alabama Code Section 32-5-193 (b) 1975. In addition the state must prove (3) that the particular test method used has been approved and adopted by officials of the law enforcement agency which administered the test, Alabama Code Section 32-5-192 (a),Estes v. State, 358 So.2d 1050 (Ala.Cr.App. 1978), cert. denied, 358 So.2d 1057 (Ala. 1978), and (4) where a blood test is involved, that "only a physician, registered nurse or duly licensed clinical laboratory technologist or clinical laboratory technician acting at the request of a law-enforcement officer" withdrew blood for the purpose of determining the alcoholic content therein. Alabama Code Section32-5-193 (c) 1975; Lankford v. Redwing Carriers, Inc.,344 So.2d 515 (Ala.Civ.App.), cert. denied, 344 So.2d 522 (Ala. 1977).
In this case the State failed to prove that the chemical analysis employed was performed according to the methods approved by the state Board of Health. Patton v. City ofDecatur, 337 So.2d 321 (Ala. 1976), specifically held that before the results of the test can be admitted into evidence, a proper predicate must be laid showing written standards promulgated by the state Board of Health under which the test was administered. Elmore v. State, 348 So.2d 265 (Ala.Cr.App.), affirmed on this point, In re Elmore, 348 So.2d 269 (Ala. 1977); Lankford, 344 So.2d at 521.
Here, as in Patton, 337 So.2d at 324:
 "Nowhere is it shown that duly adopted methods or regulations of the State Board of Health were followed in administering the test. The trial court therefore had before it no certified methods promulgated by the Board of Health for the administration of the test and consequently was unable to ascertain standards against which the evidence could be measured."
Defense counsel repeatedly raised the State's failure to lay the proper predicate for the admission of the test results and even cited the Patton case in making his objection. On this particular issue, this case is indistinguishable from Commanderv. State, Ala.Cr.App., 374 So.2d 910 (1978), writ quashed, Ala., 374 So.2d 921 (1979), wherein we held:
 "If the State is to use the statutory presumptions of intoxication and the jury is to be charged on these presumptions, it is mandatory under the terms of the statute that the `chemical analysis of the person's blood, urine or breath to be considered valid . . . shall have been performed according to methods approved by the state board of health'. § 32-5-193
(b) (Code of Ala. 1975)."
The evidence was in conflict as to whether the defendant was intoxicated at the time of the homicide. Even the State's own witness, who was riding in the automobile with the defendant at the time of the homicide, would not testify that the defendant was intoxicated. The test results raised a legal presumption that the defendant was intoxicated and were highly prejudicial. Certainly there was not sufficient evidence to reduce the admission of the chemical results to the degree of error that could be considered harmless. See Estes, 358 So.2d at 1058.
Because of the deplorable tragedy involved, this Court approaches the reversal of the defendant's conviction with grave caution. Yet under the law our conclusion is required. Therefore, the judgment of conviction in this case is reversed due to the failure of the district attorney to introduce any evidence that the test was performed in the proper and correct manner.
REVERSED AND REMANDED.
All the Judges concur.
 ON REHEARING
In laying the foundation for the introduction of the test results of the defendant's blood, the State proved that a state trooper *Page 758 
requested the blood test. Margaret T. Thompson, a registered nurse in charge of the evening shift in the Emergency Room of the Decatur General Hospital, testified that Charles Denmark, a "Registered Laboratory — Medical Laboratory Technician in the Lab", drew a blood sample from the defendant; that in the hospital she had "a set of rules of procedures set up and approved by the State Health Department to withdraw blood from an individual"; and that to the best of her knowledge these procedures were followed.
Ms. Martha Odom is a registered medical technologist employed by the State Department of Forensic Sciences in the Huntsville Division. She was properly qualified as an expert in the operation of the Gas Chromatograph for analyzing substances to determine the alcohol content. She performed an analysis known as "a head space analysis" using an instrument known as the "Gas Chromatograph" on a sample of the defendant's blood. Ms. Odom stated that the device was in "proper working order" and detailed how she performed the analysis.
After continuous objection by defense counsel to the admission of any test results, the trial judge personally examined the witness.
 "THE COURT: Mrs. Odom, were the procedures you used in performing this analysis one that is accepted and recommended by the State Health Department?
 "THE WITNESS: Yes, sir, I am licensed by the State Health Department to perform this particular analyses.
 "THE COURT: And they recognize this as being a valid test?
"THE WITNESS: That's correct."
The results of the analysis of the defendant's blood were then admitted into evidence.
Patton v. City of Decatur, 337 So.2d 321 (Ala. 1976), clearly held that written standards are required which govern not only which test method is approved by the State Board of Health but also govern the method in which the test is administered.
However, even if the predicate in this case was sufficient for the admission of the test results of the analysis of the defendant's blood, despite the absence of written standards, this case must still be reversed because of the erroneous admission of the test results of the analysis of the blood of one of the victims. Lankford v. Redwing Carriers, Inc.,344 So.2d 515 (Ala.Civ.App.), cert. denied, 344 So.2d 522 (Ala. 1977).
OPINION EXTENDED;
APPLICATION FOR REHEARING OVERRULED.
All Judges concur.