A jury found defendant guilty on a trial on an indictment that charged in pertinent part that he:
 ". . . did knowingly obtain or exert unauthorized control over lawful United States currency, food stamps and checks, a better description of which is otherwise unknown to the Grand Jury, the property of IGA Foodliner, Inc., of the value of, to-wit: Two Thousand Twenty Dollars and Eighty Cents ($2,020.80), with the intent to deprive the owner of said property, in violation of 13A-8-3 of the Code of Alabama."
The cited Section of the Alabama Code denominates the alleged felony as "Theft of Property in the First Degree" and classifies it as a Class B felony, which by § 13A-5-6 (a)(2) is punishable by imprisonment for "not more than 20 years or less than 2 years." The defendant was sentenced *Page 1134 
to imprisonment for twenty years.[1] As no issue is presented on appeal as to the sufficiency of the evidence to support the verdict of the jury and the judgment of conviction, we see no need for a narrative of the testimony, and we now proceed to a determination of the issues in the order of their presentation in brief of counsel for appellant, with such references to the evidence in the case that would be pertinent to the issues.
 I.
The following is the first issue presented in brief of counsel for appellant:
 "WHETHER A DELAY OF OVER THREE YEARS FROM THE INITIATION OF PROSECUTION DEPRIVED DEFENDANT OF HIS RIGHTS GUARANTEED TO HIM UNDER THE `SPEEDY TRIAL' GUARANTEES OF THE SIXTH AMENDMENT AND UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
Appellant's attorney correctly states in his brief the following:
 "On the afternoon of November 21, 1981, at about 3:00 P.M., a theft occurred at the Sumter IGA Foodliner in York, Sumter County, Alabama.
 "The offenders were a black male and female and the man was wearing a blue coat and blue pants.
 "The female offender went through one line, while the male offender went through another line. While the female purchased several items from a cashier, the male opened an unattended case register, taking $2000, three or four checks and some food stamps. The denominations of currency were a one hundred dollar bill, a fifty dollar bill, and the balance of the $2000 was in twenty dollar bills.
 "The offenders fled in a brown, gold or beige Oldsmobile.
 "At 4:13 P.M. on Wednesday, November 21, 1981, having received a radio message providing an automobile description, a Mississippi State Trooper stopped the automobile driven by Lundy and occupied by his female companion, . . . viz.: Beverly Holt, on the western side of Meridian, Mississippi, on [Highway] 159/20. The officer searched Lundy, and Lundy had $1004 in paper money and $2.41 in coins. Lundy and Ms. Holt were placed in the patrol car and were taken to the Lauderdale County Jail.
 "Lundy's auto was left on the side of the Interstate highway unlocked, with the keys in the ignition, awaiting the County wrecker.
 "Betty Gordy, the Vice President of the Sumter IGA Foodliner in York, Alabama, received a telephone message from the law enforcement officer, informing her that they had the culprit in custody, and asking her to go to the Lauderdale County Jail to identify him.
 "Ed Billingsley, with the District Attorney's Office for the Seventeenth Judicial Circuit of Alabama, gathered the following people, . . . viz.: Betty Gordy, Mary Maude Hobbs (also an employee of the Sumter IGA Foodliner), Ronald Harwell (Sumter County Warrant-Circuit Clerk), Deputy Sheriff Steve Moore and York Police Chief, Billy Mitchell, and went to the Lauderdale County Mississippi, Jail.
 "The representative of the District Attorney's Office, Billingsley, took the warrant with him for the purpose of securing the warrant on Lundy. When the Alabama party arrived at the jail in Meridian, the District Attorney's Office secured the warrant from the warrant clerk and had Lundy placed under arrest." *Page 1135 
The record shows that the trial of the case commenced during the latter part of November 1984, almost exactly three years from the date of defendant's arrest in Meridian, Mississippi, for the crime charged in the instant case. Appellant's attorney commences his argument as to the first issue presented by stating:
 "Arrest constitutes the initial issue of prosecution for purposes of applying the speedy trial test. See United States v. Avalos, 541 F.2d 1100 (5th Cir. 1976)."
The statement of appellant's attorney is supported by the cited case of United States v. Avalos, at 541 F.2d at p. 1108, wherein it is stated:
 "Dillingham v. United States, [423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975)] establishes that arrest constitutes the initiation of a prosecution for purposes of applying the speedy trial test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972), regardless of whether a formal indictment has been returned."
We are not of the opinion that the quoted statement from UnitedStates v. Avalos implies that due consideration is not to be given the prosecuting authority for the reasonable time necessary between the arrest and the return of an indictment, which in the instant case was less than two and one-half months after the arrest. An attorney was promptly appointed for him as an indigent for an arraignment at which he pleaded not guilty on February 26, 1982, approximately three months after defendant's arrest. For whatever unjustified delay there was on the part of the State we must look to what occurred between the arraignment and the two years and three quarters of a year before the trial commenced. By the argument in brief of appellant's counsel as to the issue now under consideration, it is contended that appellant "was deprived of rights guaranteed to him" by the "Sixth Amendment to the United States Constitution and under the due process clause of the Fifth Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment."
The attorneys for the parties on appeal are in irreconcilable disagreement as to whether the State on one hand, or defendant on the other, is chiefly responsible and to be blamed for the delay. We now consider the position of each of the parties on that subject.
It is thus stated in brief of counsel for appellant:
 "Lundy was transferred from the Lauderdale County, Mississippi, Jail to the Sumter County, Alabama Jail, and after having been held for one month, Lundy was released on a $500 bond on or about December 20, 1981. There is nothing on the face of the bond to indicate when Lundy was to appear. The sureties on the bond were a commercial bonding company, . . . viz.: Central Bonding Company, of Tuscaloosa, Alabama, and its agent, Lyne Worchester.
 "Upon being released, Lundy went back to 452 McAfee Road, Decatur, Georgia, which was the address listed for him on the bond."
The statement just quoted appears from the record to be correct except for the fact that the bond was for $5,000 instead of $500.
It appears also from the record that the order rendered by the Circuit Judge on the arraignment of defendant contained the statement "Defendant is continued under existing bond." On April 13, 1982, the trial court entered a typewritten order entitled "CONDITIONAL BOND FORFEITURE," of which the first paragraph states:
 "This being the day set for the trial of this case and the Defendant failed to appear in Court when said case was called for trial, and the Court upon consideration thereof, is of the opinion that the bond of the defendant should be conditionally forfeited, the Defendant arrested and his bond increased to $15,000.00."
In the record is a copy of a signed order of the trial judge captioned "ABSOLUTE JUDGMENT," which states:
 "It appearing unto the Court that on the 13th day of April, 1982, a conditional *Page 1136 
judgment was entered by the Court against Joseph Lundy, Jr., the Defendant, and Central Bonding Company, in the sum of Six Thousand ($6,000.00); it further appearing unto the Court that notice of the conditional judgment has been served on Central Bonding Company; and it further appearing that said notice informed the Central Bonding Company of the fact that the conditional judgment would be made absolute on the 20th day of July, 1982, unless the Defendant appeared in Court and showed good cause why the judgment should not be made absolute; and it further appearing unto the Court that the said Joseph Lundy, Jr., and Central Bonding Company failed to appear in Court on the 20th day of July, 1982, and the Court upon consideration of these facts, is of the opinion that the conditional judgment should be made absolute."
The record further shows that from the time of defendant's arraignment to and through March 8, 1984, the defendant appears to have been represented by the attorney previously appointed for him, who appeared with him at his arraignment and was given notice by the Clerk of the Court of the conditional forfeiture of the bond and the absolute judgment rendered thereon.
The next item appearing of record is a typed "MOTION FOR FAST AND SPEEDY TRIAL" signed by defendant and filed June 1, 1984, which states in part:
 "Defendant is presently incarcerated at the Mississippi Department of Corrections at Parchman, Ms., and he's available to Court, and prays that the Honorable Court render relief for a fast and speedy trial in due process."
The record further shows that on November 13, 1984, the trial judge determined that defendant was indigent and appointed counsel, different from the previously appointed counsel, who represented him on the trial and continues to represent him on this appeal.
It is to be seen from that which we have stated above that defendant was not without fault as to his not being brought to trial during a large part of 1982, all of 1983, and that part of 1984 preceding the commencement of the trial in November. He would have been brought to trial during that time if he had not defaulted on his appearance bond. We will not attempt to determine how much responsibility for his failure to appear is to be placed upon his first appointed attorney or upon representatives of the surety company on his bond, but certainly the defendant himself was not blameless, even though his imprisonment in Mississippi could have contributed to his failure to keep up with the status of the instant case. Attorney for appellee argues "that Lundy was aware of the pending case in Sumter County, however, his plan was to circumvent a prison sentence by never appearing in court." Without agreeing with such statement, we are convinced that defendant was responsible to a great extent for much of the delay in his being tried, that there was no violation by the State of defendant's right to a speedy trial under the Sixth Amendment to the Constitution of the United States and he was not denied due process of law as guaranteed by the Fifth Amendment in conjunction with the Fourteenth Amendment to the Constitution of the United States.
 II.
In the brief of counsel for appellant, the caption of the second issue is stated as follows:
 "WHERE THERE IS SIGNIFICANT INVOLVEMENT OF THE PROSECUTOR'S OFFICE IN OBTAINING THE ARREST WARRANT, IN MAKING THE ARREST, AND IN CONDUCTING A FORMAL LINEUP, THE FORCES OF THE STATE HAVE SOLIDIFIED IN A POSITION ADVERSE TO THAT OF AN ACCUSED, AND THE EXPLICIT GUARANTEES OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION ARE APPLICABLE."
Appellant's attorney proceeds to argue in the brief that "on the evening of November *Page 1137 
21, 1981, Edd Billingsley, with the District Attorney's Office of the 17th Judicial Circuit, together with Ronald Harwell, Sumter County (Alabama) Circuit Clerk, went to the Lauderdale County Jail in Meridian, Mississippi, and initiated prosecution on behalf of the prosecutor's office by obtaining the arrest warrant and by making the arrest." He urges primarily that defendant was not advised of his right to counsel. He states:
 "The formal lineup after arrest conducted by the prosecutor's office was one at which counsel was required. Counsel was not present. Lundy was never advised of his rights in regard thereto. He was denied his Sixth Amendment right to counsel at the lineup. Any evidence that he was identified at the pretrial identification procedure is not admissible at trial. This is a PER SE EXCLUSIONARY RULE."
In pursuing his argument as to this issue, counsel for appellant makes it clear that the person to whom he refers as the "prosecutor's office" was at the time Mr. "Edd Billingsley, investigator for the D.A.'s office" in Livingston, who testified in pertinent part as follows:
 "Q. This is Edd Billingsley, investigator for the D.A.'s office, and you were so employed November of 1981. Were you involved in the arrest of the defendant Joseph Lundy on the 21st day of November of 1981?
"A. Yes, sir.
"Q. Where was it that he was arrested?
 "A. He was in custody when I first saw him. We arrested him in Meridian, Mississippi.
"Q. Where was he in custody when you first saw him?
 "A. Lauderdale County Jail in Lauderdale County, Mississippi.
"Q. At that time and place was the lineup conducted?
"A. Yes, sir.
"Q. Tell us about the lineup. Who conducted it?
 "A. Well, I assisted in the lineup being conducted, but the personnel there at the Lauderdale County Jail assisted, also, in that they secured the filler personnel or people for the lineup and set up the physical facilities for that.
 "Q. How did they select the people for the lineup, if you know?
 "A. They selected them from the inmates that were there in the jail on that occasion. I did lay down or I did give them some directions as to the type people I wanted in the lineup.
"Q. What directions did you give them?
 "A. I wanted — I understood that the subject, the possible subject, was a black male. I wanted all members of the lineup to be black. I wanted them as near as possible, at or about, the same height, similar or type clothing that would be worn, similar as best as possible for length of hair and facial hair."
The cases of United States v. Wade, 388 U.S. 218,87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California,388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), are cited by appellant's attorney as authority for appellant's contention that this defendant was not advised of his right to counsel on the occasion of the lineup identification, and that admission of evidence of such identification was in violation of defendant's Sixth Amendment right to "the assistance of counsel for his defense." It is to be noted, however, that in neither of the cited cases was there a pre-indictment lineup. The principle applicable to the instant case was precisely stated by Presiding Judge Bowen in Fisher v. State, Ala.Cr.App.,439 So.2d 176, 177, cert. denied, Ala. (1983), as follows:
 "The right to counsel established in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149
(1967), applies only to post-indictment corporeal identification procedures. Wade, 388 U.S. at 237, 87 S.Ct. at 1937. A suspect has no right to counsel at a post-arrest lineup. Lomax v. Alabama, 629 F.2d 413, 415 (5th Cir. 1980), cert. denied, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981)." *Page 1138 
 III.
The third issue presented is thus captioned in brief of counsel for appellant:
 "Where an unlawful lineup forms the basis for a search warrant, all evidence thereby obtained is inadmissible."
The issue is directed at the action of the trial court in overruling defendant's objections to the introduction in evidence of some of the contents of the Oldsmobile in which the defendant and his companion were traveling as they went from York, Alabama, toward Meridian, Mississippi. As the issue is predicated upon the incorrect assumption that the lineup was unlawful, we must determine this issue also adversely to appellant.
 IV.
The fourth issue presented by appellant is as follows:
 "WHEN THE STATE DELIBERATELY, UNNECESSARILY AND UNREASONABLY INVADES THE CONSTITUTIONAL RIGHTS OF AN ACCUSED AND BRINGS HIM TO TRIAL, THE COURT SHOULD DENY THE STATE THE FRUITS OF ITS LAWLESSNESS AND DECLINE JURISDICTION."
Notwithstanding the lengthy argument of appellant's attorney, we must conclude, as we have already indicated in our previous consideration of Issue II and Issue III, that the State did not invade "the Constitutional rights of" the accused in any respect claimed by appellant. Irrespective of the correctness of any principle of law stated in the caption of the issue, we find no basis for the application of the principle to the facts in the instant case so as to form any basis for a determination that any error prejudicial to defendant was thereby committed by the trial court.
 V.
By the final issue presented by counsel for appellant, he endeavors to group three separate contentions, i.e., that the trial court erred in refusing each of three written charges, No. 1, No. 2, and No. 3, requested by defendant. Charge No. 1 was as follows:
 "A formal lineup is a critical stage of a criminal prosecution and that the 6th Amendment to the United States Constitution requires the presence of an attorney. United States v. Wade, 388 U.S. 218
[87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967), and Gilbert v. California, 388 U.S. 263 [87 S.Ct. 1951, 18 L.Ed.2d 1178] (1967)."
As we have hereinbefore stated, the principle of law stated in the charge is inapplicable to a pre-indictment lineup. Even if the situation were otherwise, the trial court would be justified in refusing the charge, as well as the other two written charges refused by the trial court, for the reason that it was abstract in that it was a mere statement of a legal principle, without instruction as to the effect upon or application to the issues. Wyrick v. State, Ala.Cr.App.,409 So.2d 969, 973, cert. denied, Ala. (1981). Furthermore, the trial court was justified in refusing such charges by reason of the inclusion therein of citations of authorities for the propriety of the charges. St. John v. State, 55 Ala. App. 95,313 So.2d 215, cert. denied, 294 Ala. 768, 313 So.2d 218
(1975).
We now comment, as we promised in footnote 1 to the first paragraph of this opinion, as to the apparent discrepancy between the judgment of sentence without any enhancement thereof by reason of any previous felony convictions, notwithstanding the contention of the prosecution that the defendant had three previous felony convictions. The concluding part of the transcript shows a lengthy hearing as to some alleged previous felony convictions, attended by considerable confusion as to the number thereof and whether defendant was represented by counsel at the time of said convictions. We note that if one is convicted of a Class B felony and has had three previous felony convictions at which he was attended by counsel, "he must be punished by life in the penitentiary." Alabama Criminal Code, § 13A-5-9 (c)(2). *Page 1139 
Appellant presents no issue whereby it is shown that the trial court committed any error prejudicial to defendant. Its judgment should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.
[1] The record discloses a "NOTICE OF INTENTION TO TREAT DEFENDANT AS AN HABITUAL OFFENDER" that referred to three alleged previous felony convictions and moved that defendant "be treated as an Habitual Offender" and that his "sentence be enhanced." The information stated leaves one uninformed as to the apparent discrepancy between the allegations of the motion and the extent of the sentence, upon which we will comment in due course in the opinion.