The appellant, Terry Powell, was charged with the murder of Nora Traylor and Barbara Eaves, "by operating a motor vehicle while under the influence of alcohol and thereby striking vehicle, the vehicle in which the said Nora Traylor and Barbara Eaves were occupants, in violation of § 13A-6-2(a)(2) of theCode of Alabama." He was found guilty of manslaughter and sentenced to six years in the state penitentiary.
Mrs. Alta Prestwood and her mother, Nora Traylor, were passengers in a car driven by Mrs. Prestwood's step-daughter, Barbara Eaves, when their car was hit in the rear by a silver-colored, Pontiac TransAm automobile being driven by the appellant *Page 142 
on Interstate 59 South. Their car was knocked into a black pick-up truck which was parked in the emergency lane of I-59 South. As a result of the accident, Barbara Eaves and Nora Traylor were killed. Alvin Ferguson, the operator of the pickup truck, was temporarily away from his truck, but testified that immediately before the impact, he heard a car traveling "flat out." DeKalb County Deputy Sheriff Donnie Wagner, the first law enforcement officer at the scene of the wreck, testified that the appellant had stated that he had had a beer or two earlier but he was not drunk. Deputy Sheriff Wagner further testified that he detected the odor of beer about the appellant and that, in his opinion, the appellant was intoxicated.
Alabama State Trooper Donald Aldridge testified that he detected the odor of alcohol about the appellant when he read the appellant his Miranda rights and placed him under arrest for driving under the influence. He further testified that, in his opinion, the appellant was under the influence "of alcoholic beverages or something."
Deputy Sheriff Wagner carried the appellant to Baptist Medical Center where a blood sample was taken by a laboratory technician, Margaret Jackson, in Deputy Wagner's presence. Deputy Wagner kept the samples and then gave them to State Trooper Shannon later that afternoon. Deputy Wagner testified that the vials of blood were in the same condition. Further, Trooper Shannon testified that upon receipt of the vials from Deputy Wagner, he refrigerated them in the Sheriff's office and then mailed them to the Alabama Forensic Laboratory; he stated that they were in the same condition when he mailed them that they were in when he obtained them from Deputy Wagner.
Trooper Shannon also testified that he advised the appellant of his Miranda rights and took a statement from him in which the appellant alleged that he had been drinking that night and in the early morning until about 4:00 a.m.; he believed that he had consumed five or six beers. The appellant stated that he was in a hurry that morning because he was late for weekend guard drill and that he believed he was traveling no more than 60 or 65 miles per hour. Deputy Wagner also testified that the appellant stated that he had been up all night without sleep, was tired, in a hurry, and had been drinking.
The State also introduced the testimony of four individuals who alleged that the appellant had passed them at a high rate of speed several miles up the road. A toxicologist testified that she did an analysis on the two tubes of blood and that the appellant's blood-alcohol content was 0.16 percent ethyl alcohol. She further testified as to the effects of having 0.16 percent alcohol in the blood: a retarded response time, slowed reactions, narrowed field of vision, and impaired fine motor skills. She also stated that a person would become rather sleepy.
The appellant testified in his own behalf that as he was nearing the exit, he slowed down and the Eaves car moved into his lane, leaving him no course of action to avoid the accident.
 I.
The appellant contends that the trial court erred by allowing evidence of results of a chemical blood analysis. He specifically argues that there was no evidence that the law enforcement agency by which the officer was employed had designated the chemical blood analysis as the proper test to be administered. Furthermore, he maintained that there was no proof that the person who withdrew the appellant's blood was qualified, nor did the State show the chain of custody or reliability of the blood test.
Code of Alabama (1975), § 32-5-192, addresses the chemical test or tests of blood, urine, or breath for the purpose of determining the alcoholic content of the blood where the individual has been lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on public highways while under the influence of an intoxicating liquor. It states in pertinent part: *Page 143 
 "The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered."
In Harper v. City of Troy, 467 So.2d 269 (Ala.Cr.App. 1985), this court outlined the predicate required for the admission of such a test, indicating that the prosecution must show (1) which test has been designated for use by the law enforcement agency administering the test and (2) the test and operator have been approved by the State Board of Health. Because the law enforcement agency designates which test is to be used, "such information could be supplied by any officer who would be in a position to know which test was authorized, e.g. among others, the officer who administered the test or a superior officer who authorized or designated the test to be administered." Although Harper and much of the case law in Alabama involve P.E.I. tests, the statute governs blood tests as well. Whetstone v. State, 407 So.2d 854 (Ala.Cr.App. 1981);Webb v. State, 378 So.2d 756 (Ala.Cr.App. 1979); Estes v.State, 358 So.2d 1050, 1053 (Ala.Cr.App. 1978). In Estes, the court indicated that although there was no testimony specifically stating which test the police department had authorized, a reading of the testimony the test operator "can leave no doubt as to which test was, in fact, designated and authorized." Id. at 1054. In Patton v. City of Decatur,337 So.2d 173 (Ala.Cr.App. 1975), the test operator was allowed to testify as to the propriety of the test he employed on the appellant; however, the case was reversed because the prosecution failed to proffer a duly certified and authenticated copy of the methods or regulations adopted and approved by the State Board of Health. Patton v. City ofDecatur, 337 So.2d 321 (Ala. 1976). However, in Ex parte Reed,492 So.2d 293 (Ala. 1986), the Alabama Supreme Court found that the State failed to prove that the law enforcement agency administering the test had adopted that form of testing. The State argued that the court should look to the entire testimony of the officer who administered the test, despite the lack of any specific testimony on this point; however, the court held that the testimony failed to prove that the test was the standard operating procedure for the Sheriff's Department, and that the absence of such specific testimony on this point may not be fatal to a conviction.
 "However, even if the test results were improperly admitted because of the lack of a formal predicate, the conviction is still due to be affirmed. The admission of evidence apparently illegal may be rendered prejudicially innocuous by subsequent legal testimony to the same effect or from which the same facts can be inferred. Yelton v. State, 294 Ala. 340, 317 So.2d 331
(1974); 7 Alabama Digest, Criminal Law § 1169.2(1). The ultimate fact to be inferred here is intoxication or drunkenness."
Estes v. State, supra, at 1054.
In the present case, there was ample evidence "from which the same facts [of the appellant's drunkenness] can be inferred." Deputy Sheriff Wagner testified that a man at the scene of the accident told him that he believed that the appellant had been drinking and that the appellant had previously stated that he had a beer or two, but that he was "not drunk." Further, Wagner testified that he detected the odor of beer about the appellant and that based upon his experience and knowledge, the appellant was "under the influence." Alabama State Trooper Donald Aldridge testified that he detected the odor of alcohol on the appellant when he read him his Miranda rights and that, in his opinion, the appellant was "under the influence." Trooper Shannon testified that he took the appellant's statement after informing him of his rights and that the appellant stated that he "had stayed up all night long, had been drinking, that he had quit drinking about four a.m. Georgia time, and that he believed he had drunk five or six beers, 12-ounce Budweisers." Because of this evidence, any error in the admission of the *Page 144 
chemical blood analysis was harmless error.
The appellant submits that Margaret Jackson, who withdrew the blood from him, was a Medical Laboratory Technician and, although her membership card in the American Medical Technologists Association was introduced into evidence, there was no proof that she was duly licensed as required by statute. Section 32-5A-194(a)(2), (1975) Code of Alabama, states:
 "When a person shall submit to a blood test at the direction of a law enforcement officer under the provisions of § 32-5-192, only a physician or registered nurse (or other qualified person) may withdraw blood for the purpose of determining the alcoholic content therein."
It has been held:
 " '[O]nly a physician, registered nurse or duly licensed clinical laboratory technologist or clinical laboratory technician acting at the request of a law enforcement officer' [may withdraw] blood for the purpose of determining the alcoholic content therein. Alabama Code § 32-5-193(c) 1975; Lankford v. Redwing Carriers, Inc., 344 So.2d 515 (Ala.Civ.App.), cert. denied, 344 So.2d 522 (Ala. 1977)." Webb v. State, 378 So.2d 756, 757 (Ala.Cr.App. 1979).
In the present case, Margaret Jackson withdrew the blood sample. She is a duly licensed medical laboratory technician, certified by the American Medical Technologists Registry, the National Board. She is a "medical technician" as defined by § 34-18-1, Code of Alabama (1975), and she was licensed by the National Registry as approved by the American Medical Association and certified by the Alabama Association of Medical Technicians. Code of Alabama (1975), § 34-18-21. She was therefore qualified to draw blood samples in accordance withCode of Alabama (1975), § 32-5A-194(a)(2).
"Compliance with the Act [Implied Consent Act, §§ 32-5-190 et seq.] is not the exclusive means for admitting evidence of blood alcohol test results. Aycock v. Martinez, 432 So.2d 1274,1277 (Ala. 1983); McGough v. Slaughter, 395 So.2d 972, 977
(Ala. 1981); Whetstone v. State, 407 So.2d 854, 857
(Ala.Cr.App. 1981)." Love v. State, 513 So.2d 19 (Ala.Cr.App. 1986). These tests may also be admitted under general evidence principles where a proper foundation has been laid. Whetstonev. State, 407 So.2d 854 (Ala.Cr.App. 1981). The appellant contends that there are missing links in the chain of custody which should render the blood test results inadmissible. The record shows that the appellant was carried to the hospital by Deputy Wagner in order for the blood sample to be taken by Margaret Jackson. She gave these results to Deputy Wagner who, in turn, gave them to Trooper Shannon that afternoon. Trooper Shannon testified that upon receiving the samples from Deputy Wagner, he placed them in the refrigerator in the District Attorney's Office and later mailed them to Auburn. Sherwin Boswell received the samples in Auburn and placed them in a refrigerator until Ms. Shevin performed the analysis. She testified that the blood arrived in good condition and free of any decomposition. The appellant contends that there was a two-day gap between the samples being placed in the refrigerator in the District Attorney's Office and the day in which they were mailed to Auburn. He claims that it is uncertain who might have handled the samples during that period.
"To warrant the reception of an objection in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty but only a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain." Sexton v.State, 346 So.2d 1177, 1180 (Ala.Cr.App. 1976). "A party need not negate the remotest possibility of substitution, alteration or tampering with the evidence [Citations omitted]." Mauldin v.State, 402 So.2d 1106, 1110 (Ala.Cr.App. 1981). The record indicates that the State proved that procedures were followed which would ensure the reliability of the results. See McGoughv. Slaughter, 395 So.2d 972, 977 (Ala. 1981). *Page 145 
 II.
The appellant alleges that the trial court erred by allowing evidence of speed at remote distances and times from the collision. Several State's witnesses testified that they saw the appellant or his automobile drive past them on I-59. One testified that she observed the car drive by her at a high rate of speed some three miles before the wreck; another testified that the Pontiac came around her at a very high rate of speed some five or six miles before the wreck; another stated that she was driving approximately 70 miles per hour and a Pontiac "flew by" her some five miles up the interstate; another testified that he saw a gray car about five miles from the collision and calculated the speed at approximately 110 miles per hour by a mathematical computation. Furthermore, Mr. Ferguson had testified that, immediately before the impact, he heard the sound of a car traveling "flat out" over the normal sounds of traffic.
The admission into evidence of the apparent speed or manner of operation of a vehicle prior to the time of an accident is a matter for the trial court's discretion. Washington v. State,473 So.2d 642 (Ala.Cr.App. 1985).
 " 'The courts of this state adhere rather uniformly to the rule that the admissibility of evidence regarding the speed of a motor vehicle before reaching the scene of the accident depends upon the facts of each case and must be left to the sound discretion of the trial court. This discretion, of course, is not without direction. The job for the trial court is to look at the speed or conduct prior to the accident and to determine if there is a high probability that it continued up until the accident. The issue is whether the prior moment of speeding is too remote to permit an inference that substantially the same rate of speed was probably maintained up to the time of the accident in question. . . ." [Washington emphasis omitted.]
 " 'C. Gamble, McElroy's Alabama Evidence (3d ed. 1977), § 45.04 (citations omitted . . .).
" '. . .'
 "Time and distance, therefore, are not the sole criteria that determine whether testimony is admissible. This principle is clearly stated as follows: '[W]hether time and distance render evidence of speed prior to the occurrence of an accident too remote depends upon the circumstances, the competency of such evidence being determinable by "causal connection" or contact with the accident rather than by specific distance or time.' P. Kelly, Blashfield's Automobile Law and Practice. § 425.2 (Rev. 3d ed. 1977)."
Washington v. State, 473 So.2d at 643-644. In Washington, this court found that the trial judge did not abuse his discretion in a murder prosecution which arose from a traffic accident, by allowing testimony as to appellant's speed and driving behavior 14 miles from, and ten minutes before, the accident, because there was a high probability that his unsafe driving continued up until the accident. See also Holmes v. State, 40 Ala. App. 251, 112 So.2d 511 (1959). In the present case, the testimony of the witnesses provided a basis for an inference that the appellant was still traveling at a high rate of speed when he hit and killed the two women; therefore, the trial court did not abuse its discretion in allowing this testimony.
 III.
The appellant contends that the trial court erred by refusing his requested instruction stating that speed does not import wantonness, and a violation of the speed limit does not in and of itself amount to willful or wanton misconduct. The appellant bases this charge on the holding in Crocker v. Lee, 261 Ala. 439, 74 So.2d 429 (1954). The pertinent language of the court in Crocker states:
 "True, as argued by appellee, speed alone does not import wantonness and the violation of the speed limit does not of itself amount to willful or wanton misconduct, but the violation of the *Page 146 
speed law under the circumstances indicated, with knowledge or its equivalent in law of the plaintiff's plight and conscious failure to act under the circumstances to avert the accident makes it a jury question as to whether or not such conduct is wantonness." Id. at 444-445, 74 So.2d 429.
The exact language of the appellant's requested charge states: "Speed alone does not import wantonness, and violation of the speed limit does not of itself amount to willful or wanton misconduct." Crocker v. Lee, 261 Ala. 439, 74 So.2d 429
(1954)."
 " 'Statements of law in judicial opinions are not always proper for jury instructions in other cases. . . . Lifting language from an opinion and embodying it in a written charge does not of itself make it a correct instruction to the jury. . . .' "
Mayes v. State, 475 So.2d 906, 907 (Ala.Cr.App. 1985), quotingKnight v. State, 273 Ala. 480, 490, 142 So.2d 899 (1962). The trial court was justified in refusing this charge "for the reason that it was abstract in that it was a mere statement of a legal principle, without instruction as to the effect upon or application to the issues. Wyrick v. State, Ala.Cr.App.,409 So.2d 969, 973, cert. denied, Ala. (1981)." Lundy v. State,484 So.2d 1132, 1138 (Ala.Cr.App. 1985). See also Free v. State,495 So.2d 1147 (Ala.Crim.App. 1986). "Furthermore, the trial court was justified in refusing such charges by reason of the inclusion therein of citations of authorities for the propriety of the charges." Lundy, at 1138, citing St. John v.State, 55 Ala. App. 95, 313 So.2d 215, cert. denied, 294 Ala. 768, 313 So.2d 218 (1975).
AFFIRMED.
All the Judges concur.